587 A.2d 913 (1991)
George A. VOSE, in his capacity as Director of the Rhode Island Department of Corrections
v.
RHODE ISLAND BROTHERHOOD OF CORRECTIONAL OFFICERS.
No. 89-457-Appeal.
Supreme Court of Rhode Island.
March 11, 1991.
Stephen Robinson, Dept. of Corrections, for plaintiff.
Gerard P. Cobleigh, Cobleigh, Sprague & Giacobbe, Warwick, for defendant.

OPINION
MURRAY, Justice.
George A. Vose,[1] Director of the Rhode Island Department of Corrections (director and department), has brought this declaratory-judgment action to determine the propriety of his new policy of requiring correctional officers to work mandatory involuntary overtime (policy). The Rhode Island Brotherhood of Correctional Officers (union) argues that the policy is improper and unauthorized in that it violates the union's collective-bargaining agreement (agreement). The union also argues that this suit must be stayed because the agreement mandates that this issue is subject to mandatory arbitration. For the reasoning that follows, we uphold the Superior Court ruling that the director may properly require officers to work involuntary overtime.
In June of 1988 the department adopted a new policy in regard to requiring officers to work involuntary overtime. Up to that time the department followed the agreement, which allowed the director to mandate involuntary overtime only if an "emergency situation" exists.
*914 The change in department policy was caused by a spiraling increase in inmates at the Adult Correctional Institutions since 1979. Coincidentally, the department was operating under certain Federal Court-imposed restrictions, because of past litigation over unconstitutional prison conditions. See Palmigiano v. Garrahy, 443 F. Supp. 956 (D.R.I. 1977).
To deal with the increased population, the director authorized extensive voluntary overtime. Even though there were many overtime volunteers, apparently staffing was still insufficient. Citing his plenary powers as derived from G.L. 1956 (1988 Reenactment) § 42-56-10, and in particular subsection (v), the director adopted the mandatory-involuntary-overtime policy to counter this shortage. The director asserts that since the agreement limits him to ordering involuntary overtime only in "emergencies," the agreement conflicts with his statutory powers and as such the contract is invalid.
On June 28, 1988, the department directed certain officers to work involuntary overtime. Eight of them refused and were given one-day suspensions. The union filed grievances on their behalf on July 20, 1988. An arbitrator was appointed on November 3, 1988 to hear these grievances. The basis for this grievance is the affirmative defense that the suspensions were improper because the suspensions were pursuant to the policy which itself is improper because it violates the agreement.
On April 19, 1989, the director filed the present declaratory-judgment action. He seeks to declare that the department's new policy is valid and that the agreement is invalid because it conflicts with § 42-56-10. The department further states that the issue in this suit is not arbitrable because questions of law are purportedly not arbitrable.

ARBITRABILITY
The department would have this court declare a per se rule that questions of law are not arbitrable. We distinctly disagree. We recently held in Power v. City of Providence, 582 A.2d 895, 900 (R.I. 1990), that the Rhode Island Commission for Human Rights does not have the authority to negotiate a settlement to an age-discrimination dispute if the settlement would attempt to strike down a statute which purportedly violates the Fair Employment Practices Act. We said that "[a]greements between parties on questions of law * * * are not binding on the judiciary or on third parties" because questions of law are for the judiciary to decide. Id. We further said that we would not necessarily accept an interpretation of law as offered by litigants "because to do so would render the court impotent to protect those not before it from the stare decisis effect of the court's decision." Id. at 901.
However, an arbitrator sits as an alternative to a judicial forum for the purposes of resolving a dispute. Therefore, like a judge sitting without a jury, an arbitrator is called upon not only to make findings of fact but also to apply the law to the facts. In applying the law, the arbitrator will necessarily be called upon to make rulings concerning the applicable law and to interpret the law according to the facts before him or her. Therefore, in this sense we must refute the department's per se suggestion that questions of law are not arbitrable.
If the state is afraid, as it says, that an arbitrator would "interpret Rhode Island State law in a fashion which could run contrary to public policy," then we suggest that it not agree to arbitrate such issues.
With that said, we do agree with the director that the instant issue is not arbitrable. The director filed the instant suit to have a determination of the breadth of his statutory powers under § 42-56-10(v). Section 42-56-10(v) states:
"In addition to exercising the powers and performing the duties which are otherwise given him by law, the director of the department of corrections shall:
* * * * * *
(v) Make and promulgate necessary rules and regulations incident to the exercise of his or her powers and the performance of his or her duties including *915 but not limited to rules and regulations regarding nutrition, sanitation, safety, discipline, recreation, religious services, communication, and visiting privileges, classification, education, training, employment, care, and custody for all persons committed to correctional facilities."
What makes this case properly justiciable[2] is that there is a conflict between this statute and the agreement. Article 17.7[3] of the agreement defines a "grievance" as "any difference or dispute between the State and the [union] with respect to the interpretation, application, or violation of any of the provisions of this agreement." Article 18.1 of the agreement states that "all matters which involve an employees' * * * suspension, [or] loss of wages * * * shall be submitted to arbitration."
While the existence of the conflict between the agreement and the statute makes this suit justiciable and coincidentally constitutes a "grievance" for purposes of Article 17.7 of the agreement, we do not believe this conflict is subject to the agreement's arbitration clause (clause 18.1). When the scope of a governmental officer's statutory authority is questioned, that officer must be entitled to a judicial determination regarding the nature and the extent of that authority. Accordingly, we rule that the determination of the director's statutory authority is a justiciable but not an arbitrable question, properly determinable in a declaratory-judgment action.

DIRECTOR'S STATUTORY AUTHORITY
We agree with the director that the issue on the merits of this case is whether the department has the authority to bargain away the director's § 42-56-10 statutory powers. We think it does not.
This issue analogously came before the court a few months ago. See Power v. City of Providence, 582 A.2d 895 (R.I. 1990). In Power, the court was called upon to interpret the Providence Retirement Act, P.L. 1923, ch. 489, which states that "`[e]ach class B member [i.e., certain police and fire personnel] who * * * attains the age of sixty shall be retired.'" 582 A.2d at 897 n. 2. The city of Providence had entered into a settlement on an age discrimination lawsuit which provided that the city would not retire police employees before the age of seventy. The appellee in Power argued that the language of the Retirement Act authorized the city to engage in age discrimination but that the city was not required by the Retirement Act to discriminate. Id. at 900. We disagreed and stated that the statute mandated age discrimination. We held that statutory powers and obligations cannot be contractually abdicated. Accordingly we found the settlement agreement in direct conflict with the Retirement Act, and thus it was a nullity because "[c]ontracts entered into in contravention to a state statute * * * are illegal, and no contract rights are created thereby." Id. (citing Birkett v. Chatterton, 13 R.I. 299, 302 (1881)).
We think the facts of this case are similar. Here, the agreement strips the director of his ability to "[m]ake and promulgate necessary rules and regulations incidental to the exercise of his or her powers [to provide for] * * * safety, discipline, * * * care, and custody for all persons committed to correctional facilities." See section 42-56-10(v). Further, due to the exigencies incident to running a correctional *916 institution, we could not fathom a result that would leave the director unable to provide for adequate security, regardless of whether an emergency is deemed to be present. We speculate that if adequate staffing was not maintained even in a nonemergency situation, that in and of itself could foster an emergency. In any event, we find that the agreement with respect to involuntary mandatory overtime is invalid because it is an improper attempt to contractually restrict the director's statutory powers. Power, 582 A.2d at 900. Accordingly the collective-bargaining agreement shall not be interpreted as restricting the director's statutory power to order mandatory involuntary overtime.
The defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the instant case are remanded to Superior Court.
NOTES
[1] John J. Moran originally instituted this action while he held the office of Director of the Rhode Island Department of Corrections. At the time of rendering this opinion, George A. Vose holds that office. Accordingly, we have substituted the latter's name as plaintiff.
[2] "Unlike the United States Constitution, there is no express language in the Rhode Island [C]onstitution which confines the exercise of [the Rhode Island Court's] judicial power to actual `cases and controversies.'" Rhode Island Ophthalmological Society v. Cannon, 113 R.I. 16, 28, 317 A.2d 124, 130 (1974). Nevertheless, the court will not issue advisory opinions or rule on abstract questions. Id. at 28, 317 A.2d at 130-31. "Litigation will be confined to those appropriate situations where the litigant's concern with the subject matter evidences a real adverseness, i.e., [a real] injury in fact." Id. at 28, 317 A.2d at 131.
[3] For some mystifying reason, the parties to this appeal have not deemed it necessary to submit a copy of the agreement to this court. Neither the lower court record nor the appendices to the appellate briefs contain the agreement. Accordingly we have been forced to resort to quoting from the union's appellate brief for the wording of the various articles of the agreement. The department has not challenged the union's quotations so we assume them to be accurate.