[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Ronald D. Arpin presents a long and troubled history to this Court. On November 13, 1974 the defendant was arraigned in the case of State of Rhode Island v. Ronald D. Arpin, P1 74-1477(A) on an indictment charging him with murder and assault with intent to commit rape. He was ordered held without bail and initially was incompetent to stand trial. He remained incompetent until June 28, 1976. On November 19, 1976 he was found guilty after a jury trial of murder in the second degree and assault with intent to commit rape. He was sentenced to twenty years at the Adult Correctional Institutions, fifteen years to serve and five years suspended on the murder charge and five years suspended on the second charge. He was placed on probation for a period of five years.
On April 25, 1983 he was released from the Adult Correctional Institutions. Three months later in July, 1983 he was arrested and charged with second degree sexual assault. He was declared to be a violator of his probation on the original indictment. He also entered a plea to the new sexual assault charge and was sentenced to ten years at the Adult Correctional Institutions, three years to serve, seven years suspended with probation.
On January 25, 1986 he was released from the Adult Correctional Institutions. On June 7, 1988 defendant was presented as a violator of the terms and conditions of his probation on both the original murder and the second degree sexual assault case. The basis of that violation is a charge of indecent exposure from New London, Connecticut. The defendant voluntarily surrendered and was sent to the Institute of Mental Health for purposes of a competency evaluation.
On March 7, 1989 defendant was found to be competent and was remanded to the Adult Correctional Institutions. On August 11, 1989 the defendant admitted violation and was declared to be a violator of the terms and conditions of his probation. He was released on the same five year suspended sentence with the addition of certain specific conditions of his probation. Among those is condition number 6 which mandates the defendant to report and participate in a psychiatric program throughout the duration of his probation.
All matters were continued for progress reports from the defendant's probation officer at three month intervals. During the first three month period the defendant was a patient at the West Haven Veterans Hospital in West Haven, Connecticut. His probation was transferred to the State of Connecticut pursuant to General Laws 1956 (1988 Reenactment) § 13-9-1, the Interstate Compact. Defendant was diagnosed as suffering form Tourette's Syndrome with exhibitionism, substance abuse, alcohol abuse, personality disorder, obsessive compulsive type.
On June 4, 1990, apparently due to budgetary problems, the defendant was discharged from the Veteran's Hospital in good standing. His Connecticut probation officer thereupon had the defendant evaluated for out-patient therapy for sex offenders. Dr. Kenneth Kashkin, a consulting psychiatrist, advised this probation officer that not only was the defendant in need of extensive treatment as a sex offender but that his release into the community without such treatment might pose a serious risk to the public.
Dr. Kashkin's diagnosis was similar to the doctors at West Haven Veterans Medical Center, that is, exhibitionism, cannabis abuse in remission and control abuse in remission.
Based upon the discharge from the Veterans Medical Center and Dr. Kashkin's report, Connecticut probation refused to continue its supervision of Mr. Arpin.
Solely on the basis of Dr. Kashkin's report the Connecticut Probation Department notified the Rhode Island authorities to take responsibility of Mr. Arpin. The defendant voluntarily returned to Rhode Island. Mr. Arpin was incarcerated first at the Intake Service Center and than at the Institute of Mental Health with the acquiescence of the Department of Corrections for the singular reason that there was no treatment program available for him in Rhode Island. This latest incarceration with no underlying criminal charge and no suggestion of a violating offense lasted over four months.
During this latest incarceration, an out-patient treatment program was developed by Mr. Thomas Wade, the defendant's Rhode Island Probation officer; Dennis Gibeau, Ph.D, a clinical psychologist with offices in Connecticut, and his defense attorney. This program has been approved by the Department of Attorney General and the Court. However, an impasse developed over funding for this treatment program.
Mr. Arpin has filed a motion asking this Court to order the Department of Corrections to pay a portion of these expenses totalling $125.00 per week for six months. This Court initially issued an order directing the Department of Corrections to pay for the first six weeks of treatment. No appeal was taken from this order. Following that six week period, a hearing was held concerning the type of treatment available to the defendant and its costs. The Department of Corrections has appeared and objected to any further order of payment and has contested the Court's jurisdiction over this matter.
There is no dispute that Mr. Arpin is in need of this out-patient psychiatric treatment and group counseling. Indeed, the parties have stipulated that without this continued and regimented program, Mr. Arpin's release into the community poses a serious threat to the safety of the community. Mr. Arpin's past record would certainly support this contention. The only real dispute centers on the question of funding.
The program outlined for Mr. Arpin is both comprehensive, inexpensive and apparently effective. According to the defendant, this is the first real psychological counseling he has ever received. Indeed, while at the Institute of Mental Health during 1990 he sought out psychiatric consultants himself. The Institute of Mental Health not only provided no psychological or psychiatric treatment for Mr. Arpin, it petitioned the Court to have Mr. Arpin's commitment to the forensic unit terminated.
The present treatment plan consists of two weekly sessions with Dr. Gibeau to which the defendant drives forty-five miles each way. He also attends a group session in Hartford, Connecticut once a week and two to three meetings of Alcoholics Anonymous each week. He sees a physician for medication once every six weeks. The defendant testified that for the first time in his life he is able to control his emotions and impulses and that in his opinion, continued counseling is absolutely necessary.
Likewise, Dennis Gibeau, Ph.D, testified that he is a staff psychologist with Special Services of the Connection Incorporated in Middletown, Connecticut. He testified that he sees Mr. Arpin for counseling twice a week. Dr. Gibeau not only agreed with the multiple diagnosis of Dr. Kashkin and the Veteran's Hospital but also added another diagnosis of post traumatic stress disorder from Viet Nam.
Dr. Gibeau testified that he developed the defendant's present treatment plan which is on an out-patient basis because there exists no in-patient treatment program for sex offenders in New England.
In his opinion, Mr. Arpin must remain in this treatment program indefinitely, that without such treatment, Mr. Arpin presents a danger to the community. Dr. Gibeau personally speaks with the defendant's probation counselor every week to advise him of his progress.
The usual cost for this type of therapy is $80.00 per hour for Dr. Gibeau, $45.00 per group session and $100.00 per hour for Dr. McDougal, the treating physician. In light of the defendant's indigency, these charges were reduced by one-third for a total of $125.00 per week.
There is no question that this defendant is indigent and barely able to support himself by selling hot dogs from a cart. He is also faced with a rigorous schedule of meetings, individual counseling and group sessions and a significant amount of travel with its attendant expenses.
The Court is thus faced with a situation in which this defendant must continue in a therapy program he cannot afford to pay for or remain incarcerated. The defendant has petitioned this Court to order the Department of Corrections to continue paying $125.00 per week toward the cost of this program for a period of six months. The Department of Corrections maintains it has no duty or responsibility toward Mr. Arpin whatsoever. It bases this position on the fact that Mr. Arpin is not in actual institutional confinement. The department suggests that it maintains adequate psychiatric programs at the Adult Correctional Institutions for its inmates. However, the record is devoid of any suggestion that this defendant received any such care or therapy. Indeed, this Court finds that Mr. Arpin's last confinement, at the behest of his Rhode Island probation officer amounted to little more than warehousing of an individual the Department of Corrections was simply unable to properly care for and supervise.
Additionally, the Department of Corrections maintains it has no funding for such a program and has made no budgetary provision for such a payment. It argues that because the legislature has not, by very specific and unequivocal language imposed such an obligation upon the Department of Corrections then such an obligation does not exist. Again, the Department continues to incorrectly refer to defendant's motion as one for private psychiatric treatment.[1]
Chapter 56 of Title 42 of the General Laws "Department of Corrections" sets forth the policy of the State of Rhode Island with regard to criminal offenders. The very first paragraph of that declaration of policy refers to treatment of offenders in the community in appropriate cases. There is no question that offenders who are on probation or parole fall within the purpose of Chapter 56 of Title 42:
 § 42-56-1 . . . (b) The purpose of this chapter is to establish a department of State government to provide for the custody, care, discipline, training, treatment, and study of persons committed to State Correctional Institutions or on probation or parole, so that those persons may be prepared for release, aftercare, and supervision in the community.
Our Supreme Court has recently addressed the nature and breadth of the statutory powers of the director of the Department of Corrections. Vose v. Rhode Island Bd. of CorrectionalOfficers, 587 A.2d 913 (R.I. 1991). The court held that any attempt to contractually restrict the powers of the director is improper and invalid. The Court not only upheld the powers of the director of corrections under § 42-56-10 but recognized the exigencies incident to running a correctional institution. Vosev. Rhode Island Bd. of Correctional Officers, 587 A.2d 913 (R.I. 1991).
General Laws 1956 (1988 Reenactment) § 42-56-10 sets forth all statutory powers of the director of corrections and clearly envisions the director entering into contracts to render services to offenders, including the kind of service which is the subject matter of this motion.
The Department of Corrections may not bargain away the powers of its director in the performance of his duties. Vose, supra. Likewise, it may not seek to avoid those responsibilities which flow from such a broad grant of authority.
The motion of the defendant is granted. The Department of Corrections shall, within ten days from the date of this decision, make payment at the rate of one hundred twenty five dollars per week for a period of six months. Following the expiration of the six month period, the defendant will be responsible for the costs associated with this therapy. Counsel shall prepare an order consistent with this decision.
[1] The court requested the parties address General Laws 1956 (1988 Reenactment) § 12-18.1-1 et seq. the Probation and Parole Support Account and whether or not these funds are available for such purposes. This statute has resulted in the collection of hundreds of thousand of dollars for probation and parole activities. All funds have been used for personnel and salaries and none for any community programs.