DECISION
Before the Court are the petitions of the City of Central Falls (hereinafter referred to as the City) and the American Federation of State, County and Municipal Employees, AFL-CIO, Council 94 and Central Falls Local 1627 (hereinafter referred to as the Union). The City moves this Court to vacate and stay the arbitration award. The Union moves to confirm the same. This matter is before the Court pursuant to the jurisdiction granted under G.L. 1956 § 28-9-18.
 FACTS AND TRAVEL
The City and the Union have had a perennial relationship over the course of which they have executed several collective bargaining agreements. This case involves a collective bargaining agreement entered into on May 27, 1997 (hereinafter referred to as the Agreement). The Agreement covered a three-year interval effective July 1, 1996 through June 30, 1999.
Prior to 1990 the City employed four bargaining unit janitors to perform custodial duties in four municipal buildings[1]. Each of the four janitors was responsible for one of the four premises and three of the four janitors were employed full time[2]. Over the course of time between 1990 and 1998, the City eliminated three of the four janitorial positions leaving one janitor who was responsible for servicing all four buildings. Toward the end of that period and without objection by the Union, the City hired a part-time employee to aid the sole janitor in servicing the four buildings. The part-time employee was eventually discharged in August of 1998. After that discharge, the City limited the responsibilities of the full time janitor to the maintenance of the City Hall building. The City solicited bids to subcontract[3] for janitorial services in the three remaining buildings.
The Union filed a grievance with the City on October 13, 1998 alleging the subcontracts were in violation of the Agreement. The City and the Union could not come to an accord and the matter was submitted to arbitration in June of 1999. A decision was rendered in favor of the Union in August of 2000. During the course of the arbitration it was determined by the Arbitrator that Article 33.1[4] of the Agreement contained ambiguous language and consequently the admission of "parol" evidence was permitted. Testimony from parties involved in the negotiating and drafting of Article 33.1 was allowed. Specifically, the former Personnel Director for the City testified as to the exact meaning of the language contained in Article 33.1. The Arbitrator considered the Personnel Director to be a disinterested witness and gave great weight to his testimony. The Arbitrator rejected the City's argument that Article 12.15[5] exclusively addressed the subcontracting or privatization of City services thus allowing them the freedom to contract other services at their discretion. The City duly filed its said petition to vacate and stay the implementation of the Arbitrator's award on November 17, 2000.
 STANDARD OF REVIEW
Ever since the decisions rendered in the "Steelworkers Trilogy" of 1960[6] courts have been particularly cautious in their application of judicial review to arbitration awards. The general trend in Rhode Island case law suggests that courts have only a limited power to vacate arbitration awards. Town of North Providence v. Local 2334 Int'l Ass'n ofFire Fighters, AFL-CIO, 763 A.2d 604 (R.I. 2000); Rhode IslandBrotherhood of Correctional Officers v. State of Rhode Island Dept. ofCorrections, 707 A.2d 1229 (R.I. 1998); National Ass'n of Nurses, LocalNo. 79 v. State, 614 A.2d 782 (R.I. 1992); Town of Coventry v. Turco,574 A.2d 143 (R.I. 1990); Jancito v. Egan, 391 A.2d 1173 (R.I. 1978);Belanger v. Matteson, 346 A.2d 124 (R.I. 1975). The Rhode Island Supreme Court in Jancito expounded on the application of judicial review of arbitration decisions holding that "[a]s long as the award `draws its essence' from the contract, and is based upon a `passably plausible' interpretation of the contract, it is within the arbitrator's authority and [the court's] review must end." Jancito, 391 A.2d at 1176 (citingUnited Steelworkers of America v. Enterprise Wheel Car Corp.,363 U.S. 593, 597). Even where the arbitrator has misconstrued the contract or the underlying law that is still not sufficient grounds for a court to strike down the award. Jancito, 391 A.2d 1173, 1175. Similarly, "[t]he statutory authority to vacate an arbitration award where the arbitrators `exceeded their powers' does not authorize a judicial re-examination of the relevant contractual provision." Id. at 1175. In Rhode Island "[a]s a general rule, when a party claims that the arbitrators have exceeded their authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made." Coventry Teachers' Alliance v. Coventry SchoolCommittee, 417 A.2d 886, 888 (R.I. 1980). The general rule limiting judicial review of arbitration awards has been codified in § 28-9-28 of the Rhode Island General Laws[7] which lists only three instances when the court has the authority to and, therefore, must vacate an arbitrator's award. Also, the legislature's silence in § 28-9-18
regarding mistake of law challenges to arbitration awards has been construed to mean that an award may not be challenged on the basis of a mistake of law. Belanger v. Matteson, 346 A.2d 124, 138. It has been well stated in Rhode Island that "[t]he judiciary has no authority to vacate an arbitrator's award absent a manifest disregard of a contractual provision or a completely irrational result." Coventry Teachers' Alliancev. Coventry School Committee, 417 A.2d 886, 889 (R.I. 1980). See alsoTown of Coventry v. Turco, 574 A.2d 143, 146 (R.I. 1990); Burns v.Segerson, 404 A.2d 500, 504 (R.I. 1979); Jancito v. Egan, 391 A.2d 1173, 1176 (R.I. 1978); Belanger v. Matteson, 346 A.2d 124, 138 (R.I. 1975). Arbitration is a vital part of a collective bargaining agreement and is favored by public policy so as to provide for swift and smooth settlement of disputes. As stated in Belanger:
 "A judicial reversal of an arbitration award based solely on the reviewing court's disagreement with the arbitrators' interpretation of the contract would not only nullify the bargain made by the parties but also threaten the strong public policy that favors private settlement of grievance disputes arising from collective bargaining agreements." Belanger v. Matteson, 346 A.2d 124, 355-356 (1975).
 The Motion to Vacate and Stay the Arbitration Award
The City of Central Falls sets forth two arguments as to why the arbitration award should be vacated: I. "[t]he arbitrator's interpretation of the [collective bargaining agreement] is irrational, illogical, and in total derogation of the plain meaning of the agreement" and II. "[t]he arbitrator exceeded the scope of his authority by interpreting the [collective bargaining agreement] to generally prohibit subcontracting resulting in an impermissible and illegal restraint on the legislative mandate of the administrative authority of the mayor of Central Falls." Petitioner's Memo at 5 and 12.
 The Arbitrator's Interpretation of The Collective Bargaining Agreement as it relates to Sections 33.1 and 12.15
I. The City contends that the Arbitrator exceeded his authority in his examination of Section 33.1 of the Agreement. The thrust of the City's remonstration is that "[i]t's patently obvious that the phrase `non-bargaining unit employees' used in Section 33.1 of 5 the [Agreement] refers only to City `employees' . . . [a] close review of the manner in which the term `employees' is utilized throughout all of the other provisions of the [Agreement] compels the incontrovertible conclusion that the term `employees' refers only to those persons employed by the city."Petitioner's Memo at 6.
The Arbitrator and the Union are of the opinion that the above-mentioned phrase in Section 33.1 can be read in one of two ways. The first reading focuses on the term "employee" as the subject of the sentence modified by the term "non-bargaining unit," the alternative reading considers the phrase "non-bargaining unit employees" to be a single entity designating a group of people considered within the contract. The Arbitrator decided that both readings were plausible thus suggesting an apparent ambiguity in the reading of the contract provision.
The City further argues that the Arbitrator has misinterpreted the language of Section 12.15 of the Agreement. It is the City's contention that the language of Section 12.15 contradicts with the Arbitrator's reading of Section 33.1 when both clauses are read together within the context of the entire Agreement and, therefore, his interpretation of Section 33.1 is wrong. They assert that "Section 33.1 prevents any employee of the City who is represented by the bargaining unit from performing bargaining unit work. Section 12.15 on the other hand, limits the City's ability to engage private vendors [to perform] rubbish and recycling services only during the term of the [Agreement], which expired on June 30, 1999." Petitioner's Memo at 11.
It is the position of the Union and the Arbitrator that Sections 33.1 and 12.15 are not incongruent but, in fact, are mere duplications of one another added to the Agreement at the time to address specific concerns during the negotiation process. In arriving at that decision, the Arbitrator relied heavily on the testimony of the City's former Personnel
Director. The Union maintains, "the duplication of clauses — each prohibiting subcontracting — speaks more to the evolution of this particular collective bargaining agreement than anything else. As commonly happens, language is lifted from one agreement and transferred — or in modern parlance `cut and pasted' — to a subsequent agreement while new language is inserted (as, in this instance, addressing the exigencies of the moment)." Respondent's Memo at 9-10.
The City relies on the holding of Rhode Island Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 584 (R.I. 1988) for a substantial portion of their argument; however, the facts of this case are substantively dissimilar. In Council 94 the court found that the word "employees" within the disputed collective bargaining agreement did not include inmates of the prison. Id. In reaching its conclusion the court quoted the trial justice saying "no reasonably literate person would seriously choose to use the word `employee' in the English language to describe the status of three-dollar-per-day prisoners laboring involuntarily for the state." Id. at 589. The case at bar is antithetical to Council 94 because there is no fundamental difference between the union janitors and the janitors who were invited to bid on the contract. Id.
It has been oft-repeated by the court that it does not have the authority to question the judgment of an arbitrator unless he or she has exceeded the scope of their authority. See generally Town of NorthProvidence v. Local 2334 Int'l Ass'n of Fire Fighters, AFL-CIO,763 A.2d 604 (R.I. 2000); Rhode Island Brotherhood of CorrectionalOfficers v. State of Rhode Island Dept. of Corrections, 707 A.2d 1229
(R.I. 1998); National Ass'n of Nurses, Local No. 79 v. State, 614 A.2d 782
(R.I. 1992); Town of Coventry v. Turco, 574 A.2d 143 (R.I. 1990); Jancitov. Egan, 391 A.2d 1173 (R.I. 1978); Belanger v. Matteson, 346 A.2d 124
(R.I. 1975). In the case at bar, the City claims the Arbitrator's interpretation of the contract exceeds the authority given to him under the Agreement because it leads to an irrational result. There is no evidence in the record to indicate the Arbitrator disregarded any portion of the contract; in fact, he examined both of the above-mentioned sections with great care prior to rendering his award. It is this Court's opinion that the Arbitrator's interpretation of the above-mentioned sections of the Agreement was within his authority and lead to a rational and reasonable result.
 The Arbitrator's Decision as it Relates to an Impermissible and Illegal Restraint on the Legislative Mandate of the Administrative Authority of the Mayor of Central Falls
II. It is argued by the City that the Arbitrator's decision must be vacated because it eradicates the City's authority to procure the services of outside vendors to perform various services. Petitioner'sMemo at 12. The City bases its argument on a recent line of cases holding duties imposed by statute cannot be abdicated, directly or indirectly, through collective bargaining. See generally State v. Rhode IslandAlliance of Social Services Employees, Local 580, SEIU, 747 A.2d at 469 (R.I. 2000); State of Rhode Island Dept. of Mental Health, Retardationand Hospitals v. Rhode Island Council 94, 692 A.2d 318 (R.I. 1997); Vosev. Broth. of Correctional Officers, 587 A.2d 913 (R.I. 1991).
The Union opines that ruling in favor of the City, based on the above-mentioned line of cases, would substantially expand the scope of the position which they represent. This Court agrees with the Union.Vose 587 A.2d 913 and its progeny set forth generally two situations when provisions of a collective bargaining agreement will not be enforced because it "would conflict with or compromise the statutory authority or legal obligations of a department of state government." SEIU, 747 A.2d at 468.
The first exception illustrated by the ruling in SEIU states simply that parties may not include in the collective bargaining agreement clauses that are directly contradictory to an express provision of a state statute. 747 A.2d at 465 (R.I. 2000). This is akin to voiding a contract for illegality. The statute involved must be on point and substantially associated to the provision in the collective bargaining agreement. The Agreement in this case contains no provisions directly gainsaying the language of state law.
The Second exception carved out by the progeniture of Vose comes into play when a collective bargaining agreement effectively usurps the statutory authority given to a municipality[8].
The City argues to this Court that the Arbitrator's interpretation of the Agreement falls under the above-mentioned exception and must therefore be void under the law of Vose. 587 A.2d 913. This Court does not believe the application of Vose to be so broad. Id. The court inVose did not intend its ruling to apply every time the statutory authority of a municipality is implicated in some wonted way. Id. Instead the Vose Court made void only provisions encompassing powers inherent and vital to the safe operation of a correctional facility. Id. at 915. Preventing the Mayor from soliciting bids for the custodial maintenance of four buildings is not the level of interference contemplated by the court in Vose, and to allow the City to disoblige its contractual duties would be unjust. Id. The City is essentially asking this Court to void the contract due to a fiscal "crisis." This Court sees no reason why the City's economic interest in balancing its budget should trump the economic interest of enforcing contracts and the sanctity of contract law. Countenancing such a position would not only hurt the ability of the City to enter into future contracts but it would make many of the City's contracts illusory and thus void. In effect this would allow the City to legally breach its contracts whenever the terms become unfavorable to them.
 CONCLUSION
After a complete review of the Arbitrator's decision and consideration of the memorandum submitted by the parties, this Court denies the City's motion to vacate the arbitration award and grants the Union's motion to confirm the same. This Court finds that the decision "draws its essence" from the Agreement and is a "passably plausible" interpretation thereof. The City has not carried its burden of presenting sufficient evidence to find the Arbitrator "manifestly disregarded" the Agreement, reached an "irrational result," or exceeded the authority given to him by the Agreement.
Prevailing counsel shall present an appropriate order consistent with the foregoing.
[1] These buildings include the City Hall, the Police Station, the Library and the Municipal Building (also referred to as "Channel One").
[2] The janitor in charge of the sanitary condition of the Library building was a part time employee.
[3] Both memorandums use the term "subcontract" however the Court wonders if this is proper under the circumstances.
[4] Article 33.1 of the Agreement provides: "Non-Bargaining unit employees shall not perform work performed by bargaining unit employees. However, the parties agree that the City shall be allowed to continue the past practice of allowing temporary employees who will be non-bargaining unit employees to fill positions which are temporarily vacant due to maternity leave or long term illness or other leaves permitted under this agreement." Article 33.1 of the Agreement Between R.I. Council 94,AFSCME, AFL-CIO Local 1627 and The City of Central Falls, Rhode Island,July 1, 1996 — June 30, 1999.
[5] Article 12.15 of the Agreement provides: "The parties agree that effective the date of the signing of this Agreement the incentive work day for sanitation workers shall be abolished. The City agrees that it will not seek competitive bids for rubbish removal or recycling services at any time during the term of this agreement." Article 12.15 of theAgreement Between R.I. Council 94, AFSCME, AFL-CIO Local 1627 and TheCity of Central Falls, Rhode Island, July 1, 1996 — June 30,1999.
[6] United Steel Workers of America v. American Manufacturing C.,363 U.S. 564 (1960); United Steelworkers of America v. Enterprise Wheel Car Corp., 363 U.S. 593 (1960); United Steel Workers of America v.Gulf Navigation Co., 363 U.S. 574 (1960).
[7] "Section 29-9-18. Grounds for vacating award.
(a) In any of the following cases the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated:
(1) When the award was procured by fraud.
(2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
(3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13.
(b) A motion to vacate, modify, or correct an arbitrator's award shall not be entertained by the court unless the award is first implemented by the party seeking its vacation, modification, or correction; provided that the court, upon sufficient cause shown, may order the stay of the award or any part of it upon circumstances and conditions it may prescribe.
(c) If the motion to vacate, modify, or correct an arbitrator's award is denied, the moving party shall pay the costs and reasonable attorney's fees of the prevailing party." R.I. Gen. Laws § 28-9-18.
[8] It should be noted that there seems to be at least a lose affiliation between this exception and its application in cases that deal with public safety issues. Courts are not as hesitant to void a provision of a collective bargaining agreement when the execution of that provision may have a negative effect on the health and welfare of its citizens or if there are potential safety hazards (i.e. forcing prison guards to work in avoidance of potential riots, and preventing medical workers from overextending themselves to prevent treatment errors). State Dept. ofMental Health, Retardation and Hospitals v. Rhode Island Council 94,692 A.2d 318 (R.I. 1997); Vose v. Broth. of Correctional Officers,587 A.2d 913 (R.I. 1991).