April 9, 2025

Supreme Court

No. 2022-285-M.P.
(PC 21-4279)

State of Rhode Island, Department of　:
　　　Corrections

　　　　　　v.　　　　　　　:

Rhode Island State Labor Relations　:
　　　Board et al.

NOTICE:　This opinion is subject to formal revision before publication in the Rhode Island Reporter.　Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State of Rhode Island, Department of  :
          Corrections

              v.           :

Rhode Island State Labor Relations   :
          Board et al.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**  This case came before the Supreme Court on the petition for writ of certiorari of the petitioner, the Rhode Island Brotherhood of Correctional Officers (RIBCO or union), seeking review of a judgment in favor of the Rhode Island Department of Corrections (DOC or department), reversing a decision of the Rhode Island State Labor Relations Board (SLRB or board), which held that the DOC had committed an unfair labor practice in violation of the Rhode Island State Labor Relations Act (Act).  The dispute centers on several changes to the department's Absenteeism Management Program (AMP), which were implemented by the DOC director in 2019.  For the reasons stated below, we affirm the judgment of the Superior Court.

On July 29, 2019, the director of the DOC sent out a department-wide e-mail announcing various changes to the disciplinary procedures and sick leave benefits contained in the AMP, which would become effective on September 1, 2019 (AMP Memo). The AMP Memo explained that a portion of the DOC's work force had been abusing the existing sick-time policy and that such abuse was costing the department millions of dollars per year. To that end, the director outlined new policies that the DOC would implement concerning discipline tracks, sanctions for absenteeism, sick notes, and pattern abuse.

With respect to discipline tracks, the DOC director departed from the "separate tracks" that the department had been using and instead created two discipline tracks with "Absenteeism/Tardiness/IMOT[1] on one track, and every other kind of discipline on the other." Regarding the sanctions for absenteeism, the director explained that discipline would first be handled at the facility level via a list of "progressive sanctions, after which discipline [would] be handled at the Department level[.]" For sick notes, the director provided that "the DOC [would] accept 'sick notes' to excuse absence only when they meet the requirements" attached to the AMP Memo. Additionally, the director established that eight-hour

---

[1] IMOT is involuntary mandatory overtime.

restriction notes[2] would no longer be accepted and any individuals seeking such a restriction would "have to apply for and be approved for FMLA." Finally, the director stated that "[p]attern sick time use will be more closely scrutinized, and abuse will be referred for discipline, even if prior to the trimester review."

In response, RIBCO sent a letter to the DOC director indicating that it considered the proposed changes to the current absenteeism policy to be mandatory subjects of bargaining and requesting "that an immediate bargaining session be scheduled for [such] purpose." The DOC responded that "it was not obligated to bargain on said issues" and refused the union's request. Thereafter, the union filed an unfair labor practice charge against the department with the SLRB. On October 11, 2019, the board issued a complaint against the DOC. Formal hearings were held before the SLRB on December 3, 2019, and February 25, 2021.

Before the board, the union argued that the DOC had violated the Act by refusing to bargain over the AMP revisions because such modifications constituted material and substantial changes in working conditions, and thus were mandatory subjects of bargaining. Conversely, the DOC argued that the AMP Memo did not alter the working terms and conditions of employment, but that even if it had, the DOC director was authorized to make such changes under the "Management Rights"

---

[2] An eight-hour restriction note refers to a note from an employee's doctor that limits the employee to only eight hours of work per day.

clause of the collective-bargaining agreement (CBA) and the nondelegable statutory authority established in G.L. 1956 § 42-56-10.

The SLRB issued a decision on May 24, 2021, finding, by a preponderance of the evidence, that the DOC had violated G.L. 1956 § 28-7-13(6) and (10) of the Act by implementing the AMP changes without first negotiating with the union. The board found that all the AMP changes, apart from the sick-note acceptance requirements, were substantial and material changes to the employees' working conditions and thus required bargaining.

Further, the board rejected the DOC's defenses. With respect to the management-rights clause argument, the board concluded that "nowhere within the terms of Section 4.1 [of the CBA] does it allow the Employer, in the Board's view, to make the unilateral changes it instituted as set forth in the July 29, 2019 memorandum." As for the DOC's statutory-authority argument, the board found that § 42-56-10 was inapplicable to the instant case because the DOC had relied on "fiscal concerns, the time and effort it spends administering the absenteeism program and employee morale as the main reasons for action it took in changing the AMP[,]" rather than safety concerns, such as "the security of the prison or the inmate population * * *."

Thereafter, the DOC appealed the board's decision to the Superior Court pursuant to G.L. 1956 §§ 28-7-29 and 42-35-15. The Superior Court found that the

board's decision "was not supported by reliable, probative, and substantial evidence on the record * * *." Additionally, the Superior Court determined that the board's decision was "clearly erroneous or affected by error of law" because the changes to the AMP were "within the DOC Director's statutorily vested powers under §§ 42-56-10(2), (5), and (7)." Accordingly, the Superior Court reversed the decision of the SLRB. The union subsequently filed a petition for a writ of certiorari to this Court, which we granted on September 12, 2023.

Before this Court, the union argues that the Superior Court erred (1) in impermissibly engaging in factfinding and weighing of the evidence; (2) in concluding that the DOC was not obligated to engage in collective bargaining over the AMP changes; (3) in concluding that the changes to the AMP were not material and substantial; and (4) in concluding that competent evidence did not exist to support the decision of the SLRB.

The DOC responds that the Superior Court did not err in reversing the decision of the board because (1) the board ignored relevant evidence; (2) the AMP changes were within the DOC director's nondelegable statutory authority under § 42-56-10; and (3) the management-rights clause of the CBA authorized the director to implement the AMP changes without bargaining with the union.

## Standard of Review

"The Superior Court's review of an administrative decision is governed by § 42-35-15" of the Administrative Procedures Act (APA). *Town of Burrillville v. Rhode Island State Labor Relations Board*, 921 A.2d 113, 118 (R.I. 2007). Section 42-35-15(g) provides that:

> "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> "(1) In violation of constitutional or statutory provisions;
>
> "(2) In excess of the statutory authority of the agency;
>
> "(3) Made upon unlawful procedure;
>
> "(4) Affected by other error of law;
>
> "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

"On certiorari, this Court will not weigh the evidence; 'we limit the scope of our review to the record as a whole to determine whether any legally competent evidence exists therein to support the trial court's decision or whether the trial court committed error of law in reaching its decision.'" *Beagan v. Rhode Island*

*Department of Labor and Training*, 162 A.3d 619, 626 (R.I. 2017) (quoting *Rhode Island Temps, Inc. v. Department of Labor and Training, Board of Review*, 749 A.2d 1121, 1124 (R.I. 2000)). "Legally competent evidence (sometimes referred to as 'substantial evidence') has been defined as 'relevant evidence that a reasonable mind might accept as adequate to support a conclusion; it means an amount more than a scintilla but less than a preponderance.'" *Town of Burrillville*, 921 A.2d at 118 (brackets omitted) (quoting *Center for Behavioral Health, Rhode Island, Inc. v. Barros*, 710 A.2d 680, 684 (R.I. 1998)). "Although this Court affords the factual findings of an administrative agency great deference, questions of law—including statutory interpretation—are reviewed *de novo*." *Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 (R.I. 2008).

## Analysis

The union argues that the Superior Court improperly engaged in factfinding and in the weighing of evidence in order to justify reversing the decision of the board. The union further asserts that the Superior Court erred in finding that the DOC was not obligated to bargain with the union because the director was exercising her nondelegable authority under § 42-56-10(2), (5), and (7) when she implemented the AMP changes. The union also maintains that the Superior Court erred in finding that the AMP changes were not material and substantial. Lastly, the union contends

that there is legally competent evidence in the record to support the decision of the SLRB.

The narrow issue before this Court on certiorari is whether there exists legally competent evidence in the record to support the Superior Court's decision reversing the board's finding that the DOC committed a violation of the Act. The Superior Court determined both that the board's decision was not supported by substantial evidence in the record and that it was affected by error of law due to the board's misapplication of § 42-56-10.

**Legally Competent Evidence**

We first turn our attention to the Superior Court's determination that the board's decision was not supported by legally competent, or substantial, evidence in the record. While the trial justice could have engaged in a more substantial discussion of this point in his decision, we agree with his conclusion. Simply put, the board's decision was replete with inconsistency.

One notable example is in the board's determination that the DOC made unilateral changes to the AMP. When the DOC argued that it had not made any substantive changes to the AMP, the board relied on the plain language of the AMP Memo to determine that there had been unilateral changes. Specifically, the board relied on the fact that the AMP Memo distinguished between what was "currently" occurring and what the "new system" would be upon the effective date as evidence

that there had been changes. However, just two pages later, in discussing the purported changes to the sick-note policy, the board determined that the new policy was not actually a change but merely reemphasized the process that had been in place since at least 2014, despite the fact that it was presented under the "current" policy versus "new system" framework. It necessarily follows that, unless the policies announced under the "current" versus "new system" framework are deemed to be changes, the use of that framework itself cannot be relied upon as legally competent evidence of unilateral changes.

Additionally, the record does not support the board's determination that there was no evidence to substantiate the DOC's argument that any changes to the AMP were within the director's nondelegable statutory authority under § 42-56-10. In making the statutory-authority argument, the DOC relied on our decision in *Vose v. Rhode Island Brotherhood of Correctional Officers*, 587 A.2d 913 (R.I. 1991). In *Vose*, the DOC director unilaterally implemented a mandatory involuntary overtime policy for correctional officers in order to respond to the staff shortage created by an increase in the inmate population; however, the policy was challenged by the RIBCO as a violation of the CBA, which permitted mandatory involuntary overtime only in emergency situations. *Vose*, 587 A.2d at 913-14. The director filed a declaratory-judgment action to determine the propriety of his policy and, on appeal, this Court concluded that the CBA's mandatory involuntary overtime restriction had

improperly stripped "the director of his ability to '[m]ake and promulgate necessary rules and regulations incidental to the exercise of his or her powers [to provide for] * * * safety, discipline, * * * care, and custody for all persons committed to correctional facilities.'" *Id*. at 913, 915 (quoting § 42-56-10(v)). As such, we made it clear that the department does not have "the authority to bargain away the director's § 42-56-10 statutory powers." *Id*. at 915-16 ("[W]e find that the agreement with respect to involuntary mandatory overtime is invalid because it is an improper attempt to contractually restrict the director's statutory powers.").

The board distinguished the instant case from *Vose* on the basis that, in this case, the DOC did not present any evidence to establish that the subject changes go to the core mission of the department. However, upon a thorough review of the record, it is clear that the board had in fact been presented with such evidence. When asked about the reasons behind the AMP changes, the DOC director testified that, apart from the financial costs, the absenteeism abuse was causing staffing issues, which in turn negatively impacted "inmate climate" because the department would have to close posts, such as "an education post or a visits post," when it did not have anyone else available to fill vacancies left by those abusing their sick leave. The director further explained that "an impact to inmate climate can have a very, very deleterious effect on the safety of the institution[.]" The board ignored this testimony in its decision and instead stated that the department cited financial issues,

- 10 -

the time and effort spent administering the AMP, and morale problems among the staff as the reasons behind the AMP changes. Given that the board made no credibility finding as to the DOC director and that this testimony was otherwise uncontradicted in the record, the board had no basis to disregard it. Accordingly, the Superior Court did not err in finding that the board's decision was not supported by reliable, probative, and substantial evidence in the record.

## Error of Law

With that, we turn our attention to the Superior Court's determination that the board's decision was affected by error of law. In light of the director's uncontradicted testimony about the staffing and security rationale underlying the AMP changes, the Superior Court concluded, contrary to the findings of the SLRB, that the subject changes were "within the DOC Director's statutorily vested powers under §§ 42-56-10(2), (5), and (7)." We agree.

As discussed *supra*, the department does not have the authority to bargain away the director's statutory powers under § 42-56-10. *See Vose*, 587 A.2d at 915. Accordingly, if the AMP changes were within the scope of the DOC director's statutory authority, then the department's refusal to bargain with the union over such changes cannot constitute a violation of the Act. Section 42-56-10 provides, in pertinent part:

"In addition to exercising the powers and performing the duties, which are otherwise given to the director by law, the director of the department of corrections shall:

"* * *

"(2) Maintain security, safety, and order at all state correctional facilities, utilize the resources of the department to prevent escapes from any state correctional facility, take all necessary precautions to prevent the occurrence or spread of any disorder, riot, or insurrection of any state correctional facility, including, but not limited to, the development, planning, and coordination of emergency riot procedures, and take suitable measures for the restoration of order;

"* * *

"(5) Manage, direct, and supervise the operations of the department;

"* * *

"(7) Hire, promote, transfer, assign, and retain employees and suspend, demote, discharge, or take other necessary disciplinary action[.]"

In enacting § 42-56-10, the General Assembly spoke in broad terms with respect to the powers and responsibilities of the DOC director. Further, we have previously recognized that the statute "clearly bestows upon the director a great deal of discretion in the exercise of his or her duties." *Vidot v. Salisbury*, 315 A.3d 928, 931 (R.I. 2024). Here, the subject changes do not impact compensation for or the amount of sick time afforded to bargaining unit members per trimester, the trimester framework, or the list of excused absences provided under the AMP; rather, the

changes concern the discipline for abuse of the AMP and the level of approval required for eight-hour restriction notes. As such, we are of the opinion that § 42-56-10(2), (5), and (7) clearly provided the DOC director with the necessary authority to implement the AMP changes.

The union contends that there must be a direct conflict between the Act and § 42-56-10 in order for the DOC to be excused from its obligation to bargain, and that in this case, the DOC failed to prove such a conflict. However, this argument is unavailing; the state is not required to prove a direct conflict with the Act in order for its agents to appropriately exercise their nondelegable statutory authority. Rather, we have said that "for the state to be excused from compliance *with the CBA*, there must be a *direct* conflict between the language of the relevant statute and the CBA * * *[.]" *State Department of Administration v. Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO, Local 2409*, 925 A.2d 939, 944-45 (R.I. 2007) (emphasis added). Here, the AMP is not a part of the CBA, thus we need not consider whether there is a direct conflict between the CBA language and the director's statutory authority under § 42-56-10. Therefore, the Superior Court did not err in finding that the board's decision was affected by error of law; the AMP changes were a valid exercise of the director's statutory authority.

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed.

The record may be remanded to the Superior Court.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State of Rhode Island, Department of Corrections v. Rhode Island State Labor Relations Board et al. |
| **Case Number** | No. 2022-285-M.P. (PC 21-4279) |
| **Date Opinion Filed** | April 9, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Carly Beauvais Iafrate, Esq. |
| | For Respondent:<br><br>Jeffrey W. Kasle, Esq.<br>Brenda D. Baum, Esq. |