**COVENTRY TEACHERS' ALLIANCE**

v.

**COVENTRY SCHOOL COMMITTEE.**

**No. 78–296–Appeal.**

Supreme Court of Rhode Island.

July 21, 1980.

Abedon, Stanzler, Biener, Skolnik & Lipsey, Richard A. Skolnik, Jeffrey J. Teitz, Providence, for appellant.

Charles T. Rennick, Jr., for appellee.

## OPINION

KELLEHER, Justice.

This is an appeal by the Coventry Teachers' Alliance (the alliance) from a Superior Court judgment vacating an arbitration award made pursuant to the terms of a collective-bargaining agreement (the agreement) between the Coventry School Committee (the committee) and the alliance. The agreement concerns the years 1975 to 1977. The alliance had filed a grievance report, alleging that the school committee had violated various portions of the agreement that related to classroom size, thereby causing overcrowded academic classes. When the grievance was rejected by the school authorities, the alliance filed a demand for arbitration. A majority of a three-person arbitration panel found that the committee had violated the provisions of the agreement which limited the size of classes to twenty-five students and ordered the committee to pay $150 to each elementary and secondary schoolteacher who taught a class consisting of more than

twenty-five students. When the alliance's petition to affirm the award came on for hearing in the Superior Court, the trial justice vacated that portion [1] of the award which related to physical-education instructors because "in my judgment, academic classes do not include gymnasium classes * * *." We reverse.

The committee, in defending the trial justice's action, acknowledges that the judiciary's role in the arbitration process is extremely limited. This concession was obviously well taken because G.L.1956 (1979 Reenactment) § 28–9–18 (1979 Supp.) limits the jurisdiction of the Superior Court to vacate an award on proof of any one of these three specific grounds: either (1) "fraud" in the procuring of the award can be demonstrated; (2) the arbitrators have exceeded their powers or have so imperfectly executed them that no "mutual, final, and definite award" was made; or (3) no valid submission or contract to arbitrate existed, and objection thereto was duly noted.

The committee contends that the arbitrators exceeded their powers by ruling on an issue not submitted for arbitration. As a general rule, when a party claims that the arbitrators have exceeded their authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made. *Ramos Iron Works, Inc. v. Franklin Construction Co.*, 174 Conn. 583, 588, 392 A.2d 461, 464 (1978); *Seppala & Aho-Spear Associates v. Westbrook Gardens*, 388 A.2d 88, 90–91 (Me.1978). Since arbitration is the creature of a contract wherein the parties themselves, by agreement and submission, define the arbitrator's powers, courts, in deciding whether arbitrators have exceeded their powers, need only examine the submission and award to determine whether the award conforms to the submission.

*Board of Education of Bridgeport v. Bridgeport Education Ass'n*, 173 Conn. 287, 289–90, 377 A.2d 323, 325 (1977). When the record in the present controversy is examined in the light of these principles and the requisite juxtaposition made, the award on its face clearly conforms to the submission.

When the arbitration panel began its hearings, the following issue was submitted by the parties:

"Under the contract between the parties, has the School Committee violated Sections 1–3 and/or 4–1 of the contract? "If so, what shall the remedy be?"

The relevant portions of the agreement [2] are to be found in sec. 4–1, which provides:

"The School Committee and the Superintendent shall make every reasonable effort insofar as the availability of funds allows for additional school construction, to maintain class sizes at the following levels:

(a) Elementary and Secondary—25 pupils per class

(b) Special Education—12 pupils or less per class as required by state law

(c) Remedial Class—5 pupils per class

"In the event that additional funds are not available for school construction, class sizes for the various grades and subjects shall be as small and uniform in size as practicable within the funds and space limitations available.

"Teaching loads for secondary-English teachers shall be a maximum 115 students.

"Classes which require specific student stations, such as, but not by way of limitation to, shop, typing rooms, laboratories and others, will not exceed the class size maxima as stated herein."

The issue submitted to the arbitration panel was broadly phrased. At the Superior Court hearing, evidence indicated

---

1. The committee has paid the $150 to the rest of the teachers whose classes exceeded the twenty-five-pupil limitation.

2. Section 1–3 of the collective-bargaining agreement reads as follows:

"All rights and privileges previously granted to teachers not in conflict with the provisions of this agreement shall remain in full force and effect. Rights and privileges previously granted teachers in conflict with this agreement are hereby rescinded."

that the committee had permitted the panel to consider as exhibits the schedules of over one hundred teachers and their respective class assignments. Included within these schedules were those of two physical-education teachers, some of whose classes exceeded the twenty-five-pupil limitation called for by sec. 4–1. A party's willingness to arbitrate a specific issue need not be express but may be implied from the conduct of the parties. *Ficek v. Southern Pacific Co.*, 338 F.2d 655, 656 (9th Cir. 1964). A party who has participated in arbitration proceedings cannot later seek to vacate the award on the ground that the controversy was not arbitrable. *Rochester City School District v. Rochester Teachers' Ass'n*, 41 N.Y.2d 578, 583, 362 N.E.2d 977, 981, 394 N.Y.S.2d 179, 182 (1977); *see also Annot.*, 33 A.L.R.3d 1242 (1970). The committee cannot now complain that the panel exceeded its powers when it agreed to and voluntarily participated in the very issue submitted to and decided by the panel.

 The committee also claims that the submission issue should be limited to the question of overcrowded academic classes because the grievance report spoke of such conditions. Although we subscribe to the belief that much of the value of arbitration would be destroyed if arbitrators were to be limited to the hypertechnicalities of pleading, we would point out that even if the trial justice thought that classes held in a gymnasium could not be considered academic, both the alliance and the committee by their actions have agreed that the panel could determine whether the twenty-five-pupil limitation actually applied to teachers whose specialty was the students' physical education.[3] Once again, we would remind the committee that this court has consistently maintained that the judiciary has no authority to vacate an arbitrator's award absent a manifest disregard of the provisions of the collective-bargaining agreement or a completely irrational result. *Burns v. Segerson*, R.I., 404 A.2d

500, 504 (1979); *Jacinto v. Egan*, R.I., 391 A.2d 1173, 1176 (1978); *Belanger v. Matteson*, 115 R.I. 332, 356, 346 A.2d 124, 138 (1975). Statutory authority to vacate an award in a situation in which the arbitrators exceeded their powers does not permit a judicial resolution of the relevant contractual provisions. The mere fact that the arbitrator misconstrues either the contract or the law affords no basis for striking down the award. With these principles in mind, we have no alternative but to vacate the judgment entered in the Superior Court.

The appeal of the alliance is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for entry of a judgment affirming the arbitrators' award.

---

**3.** There is no transcript of the proceedings before the arbitration panel. It may be that the panel's award was not based on its belief that physical education has an academic flavor to it, but rather that the panel considered a gymnasium or a ballfield as a "student station" similar to the shop, typing rooms, or laboratories mentioned in the last portion of sec. 4–1.