[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court are the petitions of the State of Rhode Island Department of Corrections (Plaintiff) and the Rhode Island Brotherhood of Correctional Officers (Defendant). Plaintiff moves to vacate the arbitration award while Defendant moves to confirm the same. Jurisdiction is pursuant to R.I. Gen. Laws § 28-9-18.
 FACTS/TRAVEL
Plaintiff and Defendant have executed several collective bargaining agreements. This case involves a collective bargaining agreement governing the years 1994 to 1996 (CBA).[1]
In February of 1991, Rhode Island faced a serious fiscal crisis, and its governor directed all state agencies to devise methods to reduce expenses. In response to this gubernatorial mandate, Plaintiff employed the National Institute of Corrections (NIC) to study whether the Department of Corrections (DOC) could abolish 59 posts without compromising the security of its penal facilities. On February 27, 1991, the NIC advised the DOC that it could eliminate 57 posts without affecting security.[2]
Consequently, the DOC abolished 51 posts at various adult correctional institution facilities.
In addition to abolishing certain posts, Plaintiff implemented two changes which Defendant later grieved. First, the DOC established a policy whereby it released at 9 p.m. correctional officers working overtime on the 3 p.m. to 11 p.m. shift. Second, it implemented a "minimum and maximum staffing" plan, defining the maximum allowed and minimum required number of correctional officers for each shift at each facility. Under the plan, if the maximum number of correctional officers reported for duty, Plaintiff filled all of the security posts. If fewer than minimum reported, the shift commander called officers on an overtime basis to meet the minimum. Finally, if the minimum or more than the minimum but less than the maximum number of correctional officers reported for duty, the shift commanders decided on a daily basis whether to fill on overtime the spots of employees who were bidded for the post but failed to report.[3]
In response to these two policies, Defendant filed a grievance in February of 1991, alleging that Plaintiff's failure to back-fill posts on an overtime basis exposed the union members to an increased risk of harm and resulted in chaos. Plaintiff denied Defendant's grievance and the matter was submitted to arbitration before Arbitrator James S. Cooper (the Arbitrator) on December 1, 1995 and January 29, 1996. On October 23, 1996, the Arbitrator rendered a decision in Defendant's favor, finding that (1) the dispute was substantively arbitrable; (2) Plaintiff violated CBA Article 9.1 "when it did not call in one or more correction[al] officers on overtime to fill authorized posts at various securities beginning in February 1991"; and (3) Plaintiff did not violate the CBA by releasing at 9 p.m. correctional officers filling posts on overtime on the 3 p.m. to 11 p.m. shift.Opinion and Award at 18. The Arbitrator issued an award, requiring Plaintiff to fill positions on an overtime basis and to compensate the employees who lost overtime opportunities for the duration of the employer's actions. The Arbitrator retained jurisdiction to specify the nature and method by which relief would be awarded. Id.
On November 15, 1996, Plaintiff filed a motion to vacate the arbitration award and a motion to stay implementation of the same. As grounds for its motion to vacate, Plaintiff asserts that the Arbitrator's award fails to draw its essence from the CBA and is irrational, and that the Arbitrator exceeded his authority under the CBA and so imperfectly executed his powers that no mutual, final, and definite award was made. Plaintiff's Motionto Vacate at 1. This Court granted Plaintiff's motion to stay on January 2, 1997. On December 1, 1997, the Arbitrator determined that Defendant's proposed model should be used to calculate the amount of back-pay owed. Supplementary Award at 5.[4]
Defendant filed a motion for confirmation of the Arbitrator's award on June 19, 1998. In support of its motion, Defendant argues that the award was (1) regular and fair, and constituted a mutual, final, and definite award upon the subject matter submitted; (2) based on a valid submission and contract; and (3) within the arbitrator's authority. Defendant's Motion toConfirm at 1.
 STANDARD OF REVIEW
It is well-settled that courts possess limited authority to review the merits of and/or vacate arbitration awards. State v.R.I. Employment Security Alliance, Local 401, SEIU, AFL-CIO, No. 2002-625, slip. op. at 4 (R.I., filed December 12, 2003); R.I.Brotherhood of Correctional Officers v. State Dep't ofCorrections, 707 A.2d 1229, 1234 (R.I. 1998); R.I. Council 94,AFSCME, AFL-CIO v. State, 714 A.2d 584, 587 (R.I. 1998); Townof Coventry v. Turco, 574 A.2d 143, 146 (R.I. 1990). Absent a manifest disregard of a contractual provision or a completely irrational result, a court must uphold an arbitration award.Turco, 574 A.2d at 146. See also Jacinto v. Egan,120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978) (stating that "[a]s long as the award `draws its essence' from the contract and is based upon a `passably plausible' interpretation of the contract, it is within the arbitrator's authority and . . . [the court's] review must end").
A court may vacate an arbitration award for only one or more of three reasons enumerated in R.I. Gen. Laws § 28-9-18. ProvidenceTeachers Union v. Providence Sch. Comm., 440 A.2d 124, 128 (R.I. 1982). A court must vacate an arbitration award:
 "(1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in 28-9-13." R.I. Gen. Laws § 28-9-18(a)(1)-(3).
This judicial deference to an arbitrator's decision reflects the philosophy that "broad judicial review in this area undermines the strong governmental policy encouraging the private settlement of labor grievances through the relatively inexpensive and expedient means of arbitration." R.I. Council 94, AFSCME,AFL-CIO, 714 A.2d at 588.
An arbitrator may exceed his or her powers, thereby requiring a court to vacate his or her award under R.I. Gen. Laws §28-9-18(a)(2), in a number of ways. First, an arbitrator acts in excess of his or her power when the arbitration award fails to "draw its essence" from the collective bargaining agreement or is not based upon a "passably plausible" interpretation of the same.R.I. Brotherhood of Correctional Officers, 707 A.2d at 1234. Therefore, a court may vacate an award where the arbitrator manifestly disregarded a contractual provision, reached an irrational result, R.I. Council 94, AFSCME, AFL-CIO, 714 A.2d at 588, disregarded clear-cut contractual language, or attributed to the language "a meaning that is other than that which is plainly expressed." R.I. Employment Security Alliance, Local401, SEIU, AFL-CIO, slip. op. at 5.
Second, an arbitrator exceeds his or her authority in interpreting the agreement "in . . . a way that contravenes state law or other public policies that are not subject to alteration by arbitration." R.I. Brotherhood of Correctional Officers, 707 A.2d at 1234. In such case, the court will not "apply the more deferential standard accorded to an arbitrator's interpretation of a . . . [collective bargaining agreement] on its merits," but will "decide the question of arbitrability de novo." Id.
Finally, "an arbitrator is powerless to arbitrate that which is not arbitrable in the first place." Id.; see, e.g., Statev. R.I. Alliance of Soc. Servs. Employees, Local 580, SEIU,747 A.2d 465, 468 (R.I. 2000) (upholding vacation of an arbitration award where "arbitrator exceeded his authority by deciding an issue that was not arbitrable ab initio").
A party asserting that the arbitrator has exceeded his or her authority bears the burden of proving this contention. CoventryTeachers' Alliance v. Coventry Sch. Comm., 417 A.2d 886, 888 (R.I. 1980). In such a case, "every reasonable presumption in favor of the award will be made." Id. Furthermore, "[t]he statutory authority to vacate an arbitration award where the arbitrators exceeded their powers does not authorize a judicial re-examination of the relevant contractual provisions." State,Dep't of Mental Health, Retardation, and Hosps. v. R.I. Council94, A.F.S.C.M.E., AFL-CIO, 692 A.2d 318, 323 n. 11 (R.I. 1997) (internal quotations omitted).
A court may not vacate an arbitration award for a mistake of law, Belanger v. Matteson, 115 R.I. 332, 356, 346 A.2d 124, 138 (1975), because the arbitrator misconstrued the contract,Jacinto, 120 R.I. at 911, 391 A.2d at 1175, or on "allegations that it rests upon errors of fact." R.I. Council 94, AFSCME,AFL-CIO, 714 A.2d at 588. Furthermore, a procedural defect does not warrant vacation of an arbitration award. Burns v.Segerson, 122 R.I. 123, 130, 404 A.2d 500, 504 (1979).
In reviewing an arbitration award, the court "must determine whether the arbitrator has resolved a grievance by considering the proper sources, such as the contract in effect between the parties," Turco, 574 A.2d at 146, "and the circumstances out of which come the so-called common law of the shop." R.I. Council94, AFSCME, AFL-CIO, 714 A.2d at 589. It should not ascertain if the arbitrator has resolved the grievance correctly. Jacinto,
120 R.I. at 912, 391 A.2d at 1176.
 MOTION TO VACATE
I. Arbitrability
Plaintiff argues that this Court should vacate the arbitrator's award on the grounds that the Arbitrator exceeded his powers because the dispute was not arbitrable. Plaintiff further argues that submission of this dispute to arbitration constituted an usurpation of the DOC and its director's statutory authority under R.I. Gen. Laws § 42-56-10(2).
Defendant, however, moves this Court to confirm the arbitrator's award, arguing that the dispute was arbitrable because it constitutes a "grievance" under the terms of the CBA. Furthermore, Defendant claims that the award does not interfere with the director's nondelegable powers because the director does not possess unfettered discretion; rather, the director's discretion is constrained by institutional and public safety objectives.
This Court finds that whether the DOC director may refuse to fill certain posts on an overtime basis does not constitute an arbitrable issue and, therefore, the Arbitrator exceeded his powers in deciding an issue that was not arbitrable ab initio. Arbitrability constitutes a question of law for the court. Elkouri Elkouri, How Arbitration Works 300 (5th ed. 1997);Rhode Island Council 94, AFSCME, AFL-CIO, 714 A.2d at 588 n. 2. Furthermore, parties may raise the question of arbitrability at any time. Woonsocket Teachers' Guild, Local 951 v. WoonsocketSch. Comm., 770 A.2d 834, 837 (2001). Accordingly, the issue of arbitrability may be considered prior to arbitration in a motion for declaratory judgment, see Vose v. R.I. Brotherhood ofCorrectional Officers, 587 A.2d 913 (1991), or after arbitration "when an award is taken to court for review or enforcement." Elkouri Elkouri, supra, at 301. "[A] reviewing court must decide the question of arbitrability de novo." State, Dep't ofMental Health, Retardation, and Hosps., 692 A.2d at 323.
It is well-settled that "powers and responsibilities assigned to governmental employers by state law may not be negotiated away and are not arbitrable." Town of West Warwick v. Local 2045,Council 94, 714 A.2d 611, 612 (R.I. 1998); Pawtucket Sch. Comm.v. Pawtucket Teachers' Alliance, Local No. 930, Am. Fed'n ofTeachers, 652 A.2d 970, 972 (R.I. 1995). In other words, "requirements of state law . . . cannot be submitted to arbitration." Pawtucket Sch. Comm., 652 A.2d at 972. In some cases, the requirements of state law that are not arbitrable consist of explicit rules. See, e.g., Town of West Warwick,
714 A.2d at 612 (holding that where a town charter prohibited the town from employing convicted felons, and the town terminated two employees who were convicted of felonies, the employees' terminations were not arbitrable because "a valid employment requirement prescribed by state law cannot be negotiated and is not a proper subject for arbitration").
In other cases, requirements of state law that are not arbitrable consist of actions taken pursuant to a general statutory grant of power. See Pawtucket Sch. Comm., 652 A.2d at 971-72. For instance, where by statute, the school committee bore responsibility for the management of schools; the implementation of laws, regulations, and school policies, programs, and directives; and the provision of programs for children with limited-English proficiency, the English as a Second Language Program Director's requirement that teachers submit copies of their lesson plans was not arbitrable. Id. at 972. In so holding, the court stated, "evaluating ESL programs and determining whether they conform with state law and the rules and regulations promulgated by the Board of Regents . . . are requirements of state law and cannot be submitted to arbitration." Id.
Similarly, in Vose v. R.I. Brotherhood of CorrectionalOfficers, 587 A.2d at 913-14, the court examined whether, pursuant to his powers under R.I. Gen. Laws § 42-56-10 generally and § 42-56-10(v)[5] specifically, the DOC director could order correctional officers to perform mandatory involuntary overtime when the collective bargaining agreement permitted it only in emergency situations. The court held that the issue was not arbitrable and that the director could order mandatory involuntary overtime as, with respect to this issue, the collective bargaining agreement was invalid because it improperly attempted to contractually restrict the director's statutory powers. Id. at 914-16. In such case, the DOC possessed no authority to "bargain away the director's § 42-56-10 statutory powers." Id. at 915.
Turning to the case at bar, this Court notes that the DOC director is assigned certain powers and responsibilities by statute. In particular, "[t]he director of the department of corrections shall . . . [m]aintain security, safety, and order at all state correctional facilities." R.I. Gen. Laws §42-56-10(2).[6] The director, in refusing to fill certain posts on an overtime basis, acted pursuant to a general statutory grant of power. The DOC director's action, therefore, much like the directors' actions in Pawtucket Sch. Comm. and Vose,
constituted a requirement of state law that was not arbitrable. As this case did not present an arbitrable issue, the Arbitrator exceeded his authority.[7]
This Court further finds that the Arbitrator's award indirectly conflicts with state law by interfering with the DOC director's nondelegable duty to maintain security, safety, and order at all state correctional facilities and, in effect, usurps the director's statutory authority. Arbitration awards that directly conflict with state law are unenforceable and will be vacated.See R.I. Alliance of Soc. Servs. Employees, Local 580, SEIU,
747 A.2d at 468-69 (stating that "[a]n arbitrator cannot resolve a labor dispute by issuing a ruling that would conflict with . . . the . . . legal obligations of a department of state government" and that statutory obligations "cannot be negated by an arbitrator who purports to do so through . . . `contract interpretation'"). Accordingly, where a state statute prohibited the inclusion of paid-sick-leave time as hours worked for purposes of computing a state employee's entitlement to overtime compensation, and a state department changed its past practice to conform with this law, the issue was not arbitrable and the trial court's vacation of an arbitration award upholding the grievance was proper. Id. at 468. See also Woonsocket Teachers'Guild, Local 951, AFT, 770 A.2d at 836, 838 (vacating the arbitrator's award when a union grieved a school principal's order that a nurse administer medication to a student in a special education program where by law, special education children had to be provided with school health services).
Like arbitration awards that directly conflict with state law, arbitration awards that indirectly conflict with state law by interfering with nondelegable duties and/or effectively usurping the statutory authority given to a municipality will be vacated as well. See State, Dep't of Mental Health, Retardation, andHosps., 692 A.2d at 323-25; see also R.I. Alliance of Soc.Servs. Employees, Local 580, SEIU, 747 A.2d at 468 (stating that "[a]n arbitrator cannot resolve a labor dispute by issuing a ruling that would . . . compromise the statutory authority or legal obligations of a department of state government"). For instance, in State, Dep't of Mental Health, Retardation, andHosps., the union grieved the Department of Mental Health, Retardation, and Hospitals' policy that public healthcare employees could generally work no more than two consecutive eight-hour shifts on overtime. 692 A.2d at 319. By statute, the department had to "take all necessary steps to promote the health of the inmates, prisoners, patients, and pupils" and to provide for the care of same. Id. The court held that "the department's power to establish a maximum-consecutive-work-hours cap . . . was not properly arbitrable because it conflicts with the nondelegable managerial duties of the department and its director." Id. at 319. In other words, "neither the department nor its director is empowered to delegate to arbitrators the department's statutory obligation to take all steps necessary to provide for the health and welfare of these patients." Id. at 324. Furthermore, "the submission of such a dispute to arbitration constituted a[n] usurpation of the exclusive statutory authority of the department and its director." Id. at 321-22.
Moreover, an arbitrator cannot, via his or her award, substitute his or her judgment for that of a governmental employer where said employer acted pursuant to a broad statutory grant of nondelegable authority. See State of Rhode IslandDepartment of Corrections v. R.I. Brotherhood of CorrectionalOfficers, 725 A.2d 296 (R.I. 1999). For example, where an arbitrator, finding that just cause for termination as required by the collective bargaining agreement did not exist, lessened an employee's sanction to a thirty-day suspension, the Court affirmed the lower court's vacation of the arbitration award holding that "the arbitrator substituted his judgment of what the proper disciplinary action should be for that of the director of the Department of Corrections." Id. at 297-98. In reaching this decision, the court recognized the breadth of the DOC director's powers, balancing the arbitrator's statutory power to modify an employer's penalty with the provisions of R.I. Gen. Laws §42-56-10, in light of the director's nondelegable authority under R.I. Gen. Laws § 42-56-10(2). Id. at 298. The court concluded that "the Legislature did not intend the director under a CBA to abdicate the disciplinary function to an arbitrator in light of the awesome responsibility that is imposed upon the director."Id.
As in State, Dep't of Mental Health, Retardation, and Hosps.,692 A.2d 318, the governmental employer here implemented a policy pursuant to a broad grant of power. Whether or not the DOC director could properly adopt such a policy, however, was not arbitrable because arbitration of such an issue conflicts with the DOC director's nondelegable managerial duties. Like the department and director in State, Dep't of Mental Health,Retardation, and Hosps., 692 A.2d 318, the DOC director could not delegate to the Arbitrator his statutory obligation and the submission of such a dispute to arbitration constituted an usurpation of the director's statutory authority.
Moreover, the Arbitrator, via his award, substituted his judgment concerning what constitutes proper security for that of the DOC director. See State of Rhode Island Department ofCorrections v. R.I. Brotherhood of Correctional Officers,725 A.2d 296, 297-98 (affirming vacation of the arbitrator's award where the arbitrator substituted his judgment for that of the DOC director's under R.I. Gen. Laws § 42-56-10). Finally, to the extent that the CBA can be interpreted to restrict the DOC director's authority to refuse to fill certain posts on an overtime basis it is invalid because, as in Vose, it improperly attempts to contractually restrict the director's statutory powers. Finding that the Arbitrator exceeded his powers in deciding an issue that was not arbitrable ab initio, and that his award interferes with the DOC director's nondelegable duties and usurps the director's statutory authority, this Court grants Plaintiff's motion to vacate the arbitration award under R.I. Gen. Laws § 28-9-18(a)(2).[8]
II. The Arbitrator's Award
Even if this dispute were arbitrable, this Court would still be required to vacate the arbitration award under R.I. Gen. Laws §28-9-18(a)(2). Under CBA Art. 4.1, entitled "Management Rights,"
 "[t]he Brotherhood recognizes that except as limited, abridged, or relinquished by the terms and provisions of this Agreement, the right to manage, direct, or supervise the operations of the State and the employees is vested solely in the State.
 For example, the employer shall have the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations:
 A. To direct employees in the performance of official duties;
 B. To hire, promote, transfer, assign, and retain employees in positions within the bargaining unit, and to suspend, demote, discharge or take other disciplinary action against such employees;
 C. To maintain the efficiency of the operations entrusted to it;
 D. To determine the methods, means, and personnel by which such operations are to be conducted;
 E. To relieve employees from duties because of lack of work or for other legitimate reasons;
 F. To take whatever actions may be necessary to carry out its mission in emergency situations, i.e.; an unforeseen circumstance or a combination of circumstances which calls for immediate action in a situation which is not expected to be of recurring nature."
Moreover, CBA Art. 9.1, entitled "Creations and Abolishment of Posts," states in pertinent part:
 "the authority to create and abolish posts in all facilities of the Correctional Institution rests fully and solely within the discretion of the Director of Corrections. . . . [T]he Director of Corrections or his designee shall determine that sufficient officers are available for proper security and operation on all shifts at all facilities."
In his Opinion and Award, the Arbitrator found that Art. 9.1 limits the director's broad grant of power under Art. 4.1.Opinion and Award at 17. The Arbitrator correctly concluded that the director, under Art. 9.1, decides what constitutes "proper security." Id. However, he then further decided that "the Director's discretion on the issue of security is exercised by the creation and abolishment of posts" and "[o]nce . . . [the director's] creation and abolishment of posts is completed, it fixes the level of security which is `proper' (at least until Director reexamines his decision)." Id. He concluded that in hiring the NIC to decide which posts could be abolished without compromising security, the DOC was exercising its power to create and abolish posts, and that the DOC was then obligated to fill those posts that the NIC did not recommend for abolishment. Id.
This Court finds that the Arbitrator reached a completely irrational result, manifestly disregarded a contractual provision, disregarded clear-cut contractual language, and attributed to the CBA language a meaning other than that which is plainly expressed. This Court additionally finds that provisions C, D, and E of Art. 4.1, by their plain meaning, all provide Plaintiff with a basis to decline to fill certain posts on an overtime basis. Specifically, these provisions allow the director to maintain the efficiency of the correctional facilities, to determine the personnel by which such operations are to be conducted, and to relieve employees from duties because of lack of work or for other legitimate reasons.
Furthermore, this Court finds that Art. 9.1 does not limit the DOC director's authority under Art. 4.1 to decline to fill certain posts on an overtime basis. Rather, Art. 9.1 confirms the director's authority to do so by giving him the exclusive right to establish new posts and eliminate existing posts, and by providing that he or his designee shall decide that enough correctional officers are present to provide proper security and operation. Moreover, Plaintiff pointedly states, and this Court agrees that, "[i]t would be straining logic to believe that the parties chose to define proper security on the basis [of] the language used in Article 9" especially considering that "this grievance was already pending at the time negotiations were being conducted for the 1994-1996 CBA and no change in the language resulted." Plaintiff's Brief at 8. Finally, even if this Court were to find that Art. 9.1 requires a certain level of security, Defendant has presented insufficient evidence to prove that fewer than enough correctional officers were present so as to constitute a breach of the provision.[9] Accordingly, this Court grants Plaintiff's motion to vacate the arbitration award.[10]
 CONCLUSION
After reviewing the Arbitrator's decision and considering the parties' memoranda, this Court reaches the conclusion that the Arbitrator's award fails to draw its essence from the CBA and is irrational, and that the Arbitrator exceeded his authority under the CBA and so imperfectly executed his powers that no mutual, final, and definite award was made. Accordingly, this Court grants Plaintiff's motion to vacate the arbitration award and denies Defendant's motion to confirm same.
Prevailing counsel shall present an appropriate order.
[1] Although Defendant filed the subject grievance under a collective bargaining agreement governing the years 1991 to 1994, the provisions at issue remain unchanged in the CBA.
[2] While the NIC's opinion letter states that 57 posts could be abolished, Opinion and Award at 4, Plaintiff and Defendant allege that the NIC recommended only 51 posts for abolishment.Defendant's Supplemental Memorandum at 1; Opinion and Award
at 4, n. 4. Regardless, the NIC did not examine for abolishment any of the posts that Defendant now seeks to have Plaintiff back-fill. Opinion and Award at 4, n. 4.
[3] The shift commander's decision, however, was subject to approval by the DOC director or his designee.
[4] Defendant's model consists of the following steps:
 "1. The parties shall calculate the number of authorized posts on each shift at each security which were not filled on an overtime basis from February 1991 to the present. The number of posts shall be multiplied by the number of hours for that post assignment.
 2. The parties shall calculate the total number of overtime hours worked by all Correctional Officers on each shift during the calculation year.
 3. The parties shall calculate the percentage of the total overtime which each Correctional Officer has worked during the calculation year.
 4. Each Correctional Officer shall be entitled to compensation at their respective overtime rate for his/her percentage of the total number of hours of unfilled authorized posts on his/her assigned shift during the calculation year." Supplementary Award
at 2.
[5] R.I. Gen. Laws § 42-56-10(v) provided that:
 "[i]n addition to exercising the powers and performing the duties which are otherwise given him by law, the director of the department of corrections shall . . . [m]ake and promulgate necessary rules and regulations incident to the exercise of his or her powers and the performance of his or her duties including, but not limited to rules and regulations regarding nutrition, sanitation, safety, discipline, recreation, religious services, communication, and visiting privileges, classification, education, training, employment, care, and custody for all persons committed to correctional facilities."
[6] R.I. Gen. Laws § 42-56-10 further provides that the director of the DOC shall:
 (5) Manage, direct, and supervise the operations of the department;
 (6) Direct employees in the performance of their official duties; . . .
 (7) Hire, promote, transfer, assign, and retain employees and suspend, demote, discharge, or take other necessary disciplinary action;
 (8) Maintain the efficiency of the operations of the department;
 (9) Determine the methods, means, and personnel by which those operations of the department are to be conducted; . . .
 (10) Relieve employees from duties because of lack of work or for other legitimate reasons; . . .
 (22) Make and promulgate necessary rules and regulations incident to the exercise of his or her powers and the performance of his or her duties, including, but not limited to, rules and regulations regarding nutrition, sanitation, safety, discipline, recreation, religious services, communication, and visiting privileges, classification, education, training, employment, care, and custody for all persons committed to correctional facilities."
[7] Defendant's argument concerning arbitrability fatally fails to recognize that an issue can constitute a grievance under the terms of a collective bargaining agreement, and meet the requirements for justiciability, while at the same time fall short of meeting the arbitrability requirement. See Vose, 587 A.2d at 915 (finding question justiciable but not arbitrable).
[8] This Court is also mindful that scholarly works recognize that the decision to fill vacancies generally lies with management. One treatise notes, "[i]t is well established that management has the right, unless clearly restricted by the agreement, to decide whether or not to fill temporary vacancies occasioned by absences due to illness, vacations, and the like." Elkouri Elkouri, supra, at 724.
[9] Specifically, when asked how Plaintiff's failure to back-fill posts on overtime resulted in "chaos," Union witnesses could testify only that inmates were not receiving disciplinary hearings as scheduled or were not being transported for non-emergency medical treatment. Opinion and Award at 6.
[10] This Court declines to entertain Defendant's argument that vacating the award and adopting Plaintiff's position will impose a result on matters over which there exists a statutory obligation to bargain as it finds that this argument constitutes a position never argued before and that is, therefore, waived.