[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is Plaintiff the State of Rhode Island's ("State") Motion to Vacate an Arbitration Award, ordering the State to place certain deputy sheriffs into the overtime rotation for out-of-state extradition trips, and to compensate them for lost extradition assignments. Defendant Rhode Island Council 94, AFSMCE ("Union") objects to Plaintiff's Motion and moves to confirm the Award. Jurisdiction is pursuant to G.L. 1956 § 28-9-18.
 Facts and Travel
Prior to July 1, 2001, there existed two separate classifications for Sheriffs and for Rhode Island State Marshals. The Sheriffs were overseen by the Department of Administration ("DOA"), and they were assigned to one of five counties. These Sheriffs primarily served to maintain courtroom and cellblock security within State courthouses. They also handled some transportation of prisoners and had some responsibility over prisoners who were placed in a hospital or state institution. In 1967, in addition to the county-based Sheriffs, a Committing Squad was formed within the Providence County Sheriffs Unit. The Committing Squad became responsible for the Providence County Courthouse cellblock and defendant/prisoner transportation. In 1974, the Committing Squad was redesignated as the Rhode Island State Marshals and placed under the control of the Department of Corrections.
Before July 2001, the Sheriffs and Marshals were each represented by separate unions for purposes of collective bargaining. They had separate and different types of training, and they had different work weeks and pay schedules. At that time, extraditions were primarily performed by Marshals. As a result, overtime assignments involving extraditions were performed by Marshals, and not by Sheriffs.
As of July 1, 2001, the Division of Sheriffs and the State Marshals were merged, becoming a single Division of Sheriffs controlled by DOA.See G.L. 1956 § 42-11-31. The merger was done by statute, which had three main features and a transitional provision. See id. Specifically, the statute provided that the county-based Sheriffs operations and the State Marshals operation would be consolidated as the Division of Sheriffs and controlled by the DOA. See id. The Marshals classification no longer existed, and both Sheriffs and Marshals were given new, more highly paid Sheriffs' classifications. See id. The new Division would elect a single bargaining representative. In addition, all of the resources formerly held by the County Sheriffs and Marshals would be transferred to the new Sheriffs Division. See id. The actual functions performed by Sheriffs and Marshals were to be combined and the statute provided that the actual transfer of functions may be postponed by the Director of Administration, but that all functions must be transferred within three years. See G.L. 1956 § 42-11-21(d).
In addition, the statute permitted the former Marshals to be included in a "special operations unit," which would be responsible for extraditions, among other things. Sec. 42-11-219(c). The special operations unit was initially comprised of personnel transferred from the Marshals unit. Id. The State did not actually create a special operations unit, but instead designated the former Marshals as the Inmate Transportation Unit ("ITU"). Because of the legislation, Marshals were not required to re-bid into the ITU. They continued to perform their pre-existing duties, including extraditions and overtime extradition work.
After the merger, Deputy Sheriff Lt. Leo Donovan, Jr. (Lt. Donovan), who was responsible for the Sheriffs Training Academy, had discussions with High Sheriff DeCastro, who would lead the new Sheriffs Division, about cross-training the former Sheriffs. The idea was to train the former Sheriffs so that they could perform the work of former Marshals, including extraditions, and extradition training was made available to former Sheriffs in October and November 2001.
At about the same time, in September 2001, the new Sheriffs Division agreed to be represented for purposes of collective bargaining by Council 94 and to be covered by a single collective bargaining agreement. The parties adopted the CBA that previously had governed the relationship between the State and the former Sheriffs.
In October 2001, Lt. Donovan prepared a single statewide seniority list for all Sheriffs. However, the list was not implemented, and extradition overtime assignments continued to be offered only to Sheriffs in the ITU. In April 2002, the Union filed a grievance. That grievance was denied at all levels and proceeded to Arbitration. On November 29, 2004, the Arbitrator issued a seventy-two page written decision, in which he concluded that all Sheriffs, whether former Sheriffs or former Marshals, should have been considered for extradition overtime consistent with the CBA based on their qualifications. As a remedy, the arbitrator ordered the State to include all qualified Sheriffs in the overtime rotation for extradition details, regardless of whether they are assigned to the ITU, and to compensate those individuals for missed overtime opportunities during the period when they were excluded from the rotation.
The State has filed a motion to vacate the arbitration award in Superior Court under § 28-9-14. The Union objects to the motion to vacate and has filed its own motion to confirm under Sec. 28-9-17.
 STANDARD OF REVIEW
Judicial authority to review or vacate an arbitration award is limited. Rhode Island Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 584,587 (R.I. 1998). An arbitration award may be vacated when the arbitrator manifestly disregarded the law or the contract, or when the arbitration award was completely irrational. Prudential Property and CasualtyInsurance Co. v. Flynn, 687 A.2d 440, 442 (R.I. 1996). As long as the award "draws its essence" from the contract and is based upon a "passably plausible" interpretation of the contract, it is within the arbitrator's authority, and not subject to vacation by the Court. Jacinto v. Egan,120 R.I. 907, 391 A.2d 1173 (1978). Grounds for vacating an award are provided by statute in G.L. 1956 § 28-9-18:
 "(a) In any of the following cases the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13.
 (b) A motion to vacate, modify, or correct an arbitrator's award shall not be entertained by the court unless the award is first implemented by the party seeking its vacation, modification, or correction; provided, the court, upon sufficient cause shown, may order the stay of the award or any part of it upon circumstances and conditions which it may prescribe.
 c) If the motion to vacate, modify, or correct an arbitrator's award is denied, the moving party shall pay the costs and reasonable attorneys' fees of the prevailing party."
An arbitrator may exceed his or her powers, thereby requiring a court to vacate an arbitration award if that award fails to "draw its essence" from the collective bargaining agreement or is not based upon a "passably plausible" interpretation of the same. R.I. Brotherhood of CorrectionalOfficers, 707 A.2d 1229, 1234 (R.I. 1998). Therefore, a court may vacate an award where the arbitrator manifestly disregarded a contractual provision, reached an irrational result, R.I. Council 94, AFSCME,AFL-CIO, 714 A.2d at 588, disregarded clear-cut contractual language, or attributed to the language "a meaning that is other than that which is plainly expressed." State v. R.I. Employment Security Alliance, Local401, 840 A.2d 1093, 1096 (R.I. 2003).
A party asserting that the arbitrator has exceeded his or her authority bears the burden of proving this contention. Coventry Teachers' Alliancev. Coventry Sch. Comm., 417 A.2d 886, 888 (R.I. 1980). In such a case, "every reasonable presumption in favor of the award will be made." Id.
Furthermore, "the statutory authority to vacate an arbitration award where the arbitrators exceeded their powers does not authorize a judicial re-examination of the relevant contractual provisions." State, Dep't ofMental Health, Retardation, and Hosps. v. R.I. Council 94, A.F.S.C.M.E.,AFL-CIO, 692 A.2d 318, 323 n. 11 (R.I. 1997) (internal quotations omitted).
 ARBITRABILITY
On appeal, the State argues that this case was non-arbitrable because it required the arbitrator to interpret and apply a statute, rather than the collective bargaining agreement. It is the State's position that §42-11-21(c) expressly assigns extradition to a special unit, now known as the ITU, and that the arbitrator's expansive conclusion regarding overtime assignments defeats the statutory purpose and contravenes state law. Additionally, the State asserts that even if this Court were to find that the Director of Administration was contractually obligated to consider Sheriffs outside the ITU for inclusion in the overtime at issue, the arbitrator erred in awarding benefits from April 2002, when the merger statute gives the DOA three years to transfer functions between the Sheriffs and the Marshals.
Conversely, the Union contends that the dispute is arbitrable because there is no conflict between the merger statute and the collective bargaining agreement. According to the Union, the State can comply with both the merger statute and the collective bargaining agreement by awarding overtime on the basis of seniority among all members of the bargaining unit, regardless of whether the member was initially a Sheriff or a Marshal. Moreover, the Union maintains that the arbitrator properly awarded benefits from April 2002 because the three-year transition clause in the merger statute is permissive, and therefore the State should have complied with both state law and the collective bargaining agreement by allowing both Sheriffs and Marshals to take part in overtime extradition assignments beginning in 2002.
Our Supreme Court has repeatedly held that Rhode Island statutory law trumps contrary contract provisions. State of Rhode Island v. RhodeIsland Alliance of Soc. Sec. Employees, Local 580, SEIU, 747 A.2d 465
(R.I. 2000). Additionally, the Rhode Island Supreme Court has observed that an arbitrator cannot "agree to relieve the parties to a CBA of their obligation to comply with applicable state law because of an inconsistent CBA provision or a contrary past practice of the parties." Id. Thus, in reaching a decision in this matter, this Court must look to both §42-11-21(c) and the parties' collective bargaining agreement.
Section 42-11-21(c) of the Rhode Island General Laws provides:
 "The Director of the Department of Administration shall appoint deputy sheriffs and other necessary classifications subject to the appropriations process, to provide assistance in the areas of courthouse and cellblock security, transportation of prisoners, staff training and special operations. Special operations shall include, but shall not be limited to, transportation of high risk inmates, extraditions, the execution of criminal warrants, prosecution and mutual aid to the police departments of the cities and towns. This special operations unit will initially be comprised of personnel transferred from the Rhode Island state marshals . . ."
The relevant provisions of the contract at issue state:
 "Overtime work is to be made a matter of record and distributed fairly and equitably among employees eligible for and capable of performing the work in their respective division and class of position. A record of overtime work will be furnished to the Union at the close of each pay period." CBA, Article 8.6.
 "Overtime shall be offered to employees eligible for overtime on the basis of their seniority in their classification within the division in which they are employed. An employee offered overtime will be excused at their request, provided authorized personnel are available and willing to meet the need; and any employee so excused shall not be offered overtime work again, until their name comes up again in the seniority rotation. In the event that an insufficient number of employees within the classification and division in which overtime work is assigned voluntarily accept the assignment, the State may direct and require employees within the classification and division to perform the work. Such required overtime assignments shall be made in the reverse order of seniority. A record of overtime work will be furnished to the Union at its request." Id. at Article 8.8.
Based on the express language of § 42-11-21(c), the power to appoint Sheriffs to special operations lies exclusively with the Director of the Department of Administration. In contrast to the CBA, § 42-11-21(c) does not distinguish between regular assignments and overtime work when giving the Director of the Department of Administration the authority to make assignments for the special operations units Although it is evident to this Court that a decision not to allow Sheriffs outside the ITU unit to perform extraditions on overtime if they are otherwise clearly qualified to do so creates resentment and discord in the Department, it is equally clear to this Court that it was not within the Arbitrator's authority to decide which Sheriffs could perform specialized operations. In Correctional Officersv. State of Rhode Island Department of Corrections,707 A.2d 1229, 1234, (R.I. 1998), the Rhode Island Supreme Court stated:
 "An arbitrator may exceed his or her powers by interpreting a CBA in such a way that it contravenes state law or other public policies that are not subject to alteration by arbitration. In these instances we do not apply the more deferential standard accorded to an arbitrator's interpretation of a CBA on its merits; instead, we decide the question of arbitrability de novo. Our heightened level of review in such cases is predicated on the possibility that an arbitrator might be called upon to consider and to interpret a CBA in such a way that it would alter existing statutory policies and override supervening state law governing the public employment sector." [internal citations omitted]
The Arbitrator in this case exceeded his powers by interpreting the CBA in a manner that clearly frustrates the intent of a statute that expressly and unambiguously gives the Director of the Department of Administration the authority to decide who performs special operations in the Department. The Arbitrator's exhaustive discussion refuses to acknowledge the obvious: the Sheriff Department's ITU or special operations unit is statutorily created; the Director of the Department of Administration possesses the statutory power of appointment over those working in this unit; and this unit is entrusted with significant responsibilities related to efficient judicial administration and public safety.
This Court relies on the rationale expressed by our Supreme Court inVose v. Brotherhood of Correctional Officers, 587 A.2d 913 (R.I. 1991) and State Dept. of MHRH v. Council 94, 692 A.2d 318 (R.I. 1997). When an arbitrator is confronted with a conflict between a statute and a CBA, as we are in this matter, this conflict is not subject to the agreement's arbitration clause. The Supreme Court has reasoned:
 "What makes [a] case properly justiciable is that there is a conflict between the statute and the agreement. . . .
 While the existence of the conflict between the agreement and the statute makes this suit justiciable and coincidentally constitutes a "grievance". . . we do not believe this conflict is subject to the agreement's arbitration clause. When the scope of a governmental officer's statutory authority is questioned, that officer must be entitled to a judicial determination regarding the nature and extent of that authority. Accordingly, we rule that the determination of a director's statutory authority is a justiciable but not an arbitrable question. Vose, 587 A.2d at 915.
This Court further elaborated on this notion in State Dept. of MHRH,692 A.2d at 324, declaring that
 ". . . the extent to which the state is obligated to arbitrate regarding its health-care employees' hours of work is not boundless. Rather, it is circumscribed by the statutory obligations of the department and of the director to protect the disabled, custodial patients who are entrusted to their care (and indirectly by their obligations to provide for the protection of the public health). Thus, neither the department nor its director is empowered to delegate to arbitrators the department's statutory obligation to take all steps necessary to provide for the health and welfare of these patients. [citations omitted]
In applying the Supreme Court analysis to the instant dispute, it is clear that an arbitrator's stroke of the pen cannot alter the statutory recognition of the special operations unit or the Director of Administration's statutory power to decide who will perform the functions of this unit.
Furthermore, this Court finds the Arbitrator's reliance on this Court's decision in State of Rhode Island vs. Rhode Island Council 94, AFSCME,AFL-CIO, LOCAL 2409, 2004 R.I. Super. LEXIS 189 (2004) — the "hospital detail" case — misguided. In that case, this Court held that the arbitrator did not exceed his authority when he required the state to comply with the Sheriff's CBA sooner than the three years provided for by the merger statute. Id. In the hospital detail case, however, there was no express statutory provision designating a particular unit to the assignment at issue and giving the Director of the Department of Administration the exclusive authority to appoint deputies to that unit.See id. Additionally, in contrast to extradition assignments, hospital details were performed by both sheriffs and marshals before and after the new Division of Sheriffs was established. See id. The grievants in that case were already working the details and the only issue was how quickly the state was required to adjust the overtime-calling procedure to achieve fair and equitable distribution on a state-wide basis. See id. In finding that the arbitrator could order the Director to implement a single, statewide overtime call list for hospital details before the statutory 3-year transition period, this Court recognized that the only reason for the delay in implementing the seniority list for hospital details was the Department's administrative inefficiency. The "hospital detail" case was an unfortunate example of massive administrative incompetence in failing to timely compile a comprehensive list of those eligible for such assignments. By contrast, the present case involves the assuming of considerable responsibilities for a "special operations," assignment which is statutorily created. Moreover, special operations are statutorily defined as including "transportation of high risk inmates, extraditions, execution of criminal warrants, and prosecution and mutual aid to the police departments of the cities and towns." Sec. 42-11-21(c). Implicit in the performance of these special operations is the requirement of appropriate training, evaluation and supervision to insure a threshold level of competence by the Sheriffs operating within this unit. This case is clearly distinguishable from this Court's previous decision in the "hospital detail" case.
 CONCLUSION
For the reasons stated above, this Court grants the Plaintiff's Motion to Vacate the Arbitration Award and denies Defendant's Motion to Confirm the Arbitration Award.