DECISION
This case is before the Court on the Cumberland Teachers' Association's motion to vacate an arbitration award. On December 23, 2008, the arbitrator issued an award denying grievances by the Association. The Association moved to vacate the award, and the Cumberland School Committee counterclaimed moving the Court to confirm. For the reasons set forth below, the Court denies the Cumberland Teachers' Association's motion and upholds the Arbitration Award.
 I Facts and Travel
In 2006, the Cumberland Teachers' Association ("Union") and the Cumberland School Committee ("Committee") began negotiating a Collective Bargaining Agreement ("CBA"). Through mediation, the parties tentatively agreed on a CBA that would cover the September 1, 2006 through August 31, 2009 time period.[1]
Prior to this new CBA, Cumberland teachers were on a twelve step salary schedule. Teachers who taught at least one hundred thirty-five (135) days during the school year would be placed on the next salary step in the following year. *Page 2 
However, during the 2006 negotiations, the Union and the Committee agreed to reduce the salary schedule to only ten steps and to simultaneously implement wage increases across the board.
The present dispute concerns the appropriate method through which a teacher transitions from a twelve step pay schedule to a ten step schedule. The tentative agreement, signed by both parties, contained "no explanation of the rules for salary step placement and movement." Cumberland School Committee v. Cumberland Teachers'Association (NEARI), (Arbitration Decision at 35.) Moreover, despite executing this tentative agreement, "the parties did not immediately re-compile and sign an integrated version of the full contract." Id. at 45. By the spring of 2007, the Union had drafted the full contract and presented it to the Committee to be signed. Despite declining to sign the agreement, the "Committee [is] not repudiating those portions of the [tentative agreement] that had been agreed to." Id. at 46.[2]
The new agreement provided for a prolonged collapse of the salary schedule. Instead of going directly from twelve steps to ten, the parties planned to jump down to eleven steps during the 2006-2007 contract year, and down to ten steps the following year. Notably, neither the parties nor the arbitrator currently object to the manner in which the teachers transitioned from twelve steps to eleven during the 2006-2007 school year. SeeId. at 43. However, after the issuance of the first paychecks in September of 2007, the Union filed a grievance which ultimately progressed to arbitration. The grievance asked the arbitrator to determine whether the Committee placed the teachers at the correct salary level for the 2007-2008 school year. In essence, the understanding of each party regarding how the teachers were transitioned from the modified eleven-step scale to the new ten step scale for the 2007-2008 school year was diametrically opposed. *Page 3 
At arbitration, the Union argued that its view of the appropriate salary step movement for the 2007-2008 school year is supported by the language of the agreement. Conversely, the Committee argued that the evidence presented during arbitration reflected either a mutual mistake or an ambiguity in the CBA.
The seventy-four page arbitration decision provides forty-four pages of "background" in which the arbitrator extensively discussed the fact intensive negotiation and mediation process undergone by the parties. According to the arbitrator, the
 parties realized that the transitional issues were significant[, and] discussed [them] several times during the course of the negotiations/meditation. Unfortunately, however, the parties did not see fit to embody the agreed-upon transitional rules, if any, in writing. Id. at 63.
After an extensive review of the negotiating history, the arbitrator did not find "any clear and direct indicator of an agreed-upon rule for the year 2 moves." Id. Despite both parties insistence on the validity of various written proposals, handwritten notes, and oral discussions, the arbitrator found that "both parties retained their own subjective and divergent understandings of the way the moves should be accomplished."Id. at 65.
In the absence of any direct agreement on point, the arbitrator sought evidence of the parties' intentions elsewhere. He indicated that
 the most reliable and the most objective indicator of the parties' intention may be found in their agreement to move the teachers "horizontally" during year 1 (e.g., from old Step 6, to new Step 6) and then to increase the year 2 pay by 4% (in two semi-annual increments of 2%).
The arbitrator indicated that the Union's proposed "down/diagonal" transition "would produce a disproportionately high pay increase for the teachers, whereby they would move up two steps, rather than one step, during a single year." Id. at 66. The arbitrator determined that the parties *Page 4 
did not intend such a result. Instead, he decided that the appropriate way to determine the next higher pay step is to apply "the pay step below that which the teacher was on during year 1, as augmented by the general pay increase that was negotiated for year two (2% + 2%)." Id. at 67. The arbitrator — in order to provide a concrete example — applied this methodology to an actual teacher and determined that the "salary placements effectuated by the School Committee were contractually proper."Id. at 74.
Presently, the dispute has come before this Court on the Union's motion to vacate the arbitration award. It argues that the arbitrator exceeded his authority in reaching an irrational result because he allegedly ignored crucial evidence of an explicitly agreed upon depiction of how teachers progress from the 2005-2006 twelve step scale to the 2007-2008 ten step scale.
 II. Standard of Review
"Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." Cityof East Providence v. International Association of FirefightersLocal 850, 982 A.2d 1281, 1285 (R.I. 2009). Thus, the Court reviews arbitration "awards under an exceptionally deferential standard[.]" North Providence School Committee v. NorthProvidence Federation of Teachers, Local 920,945 A.2d 339, 347 (R.I. 2008). Courts must vacate arbitration awards in the following circumstances:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13. G.L. 1956 § 28-9-18(a). *Page 5 
An arbitrator exceeds his authority under § 28-9-18(a)(2) when the award does not "draw . . . its essence from the collective-bargaining contract or is not based on a pass[a]bly plausible interpretation thereof[.]" Rhode IslandBrotherhood of Correctional Officers v. Department ofCorrections, 707 A.2d 1229, 1234 (R.I. 1998) (internal quotations omitted). "As a general rule, when a party claims that the arbitrators have exceeded their authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made."Coventry Teachers' Alliance v. Coventry School Committee,417 A.2d 886, 888 (R.I. 1980) (internal citation omitted).
"A reviewing court must determine whether the arbitrator has resolved a grievance by considering the proper sources, such as the contract in effect between the parties." State v. NationalAssociation of Government Employees Local No. 79,544 A.2d 117, 119 (R.I. 1988). Judicial reversal of an arbitrator's award "would not only nullify the bargain made by the parties but also threaten the strong public policy that favors private settlement of grievance disputes arising from collective bargaining agreements." Belanger v. Matteson,346 A.2d 124, 355-356 (R.I. 1975).
G.L. 1956 section 28-9-16, the statute governing the enforceability of arbitration awards, states:
 To entitle the award to be enforced, as prescribed in this chapter, it must be in writing, within the time limited in the submission or contract, if any, subscribed by the arbitrator or arbitrators making it, and either filed in the office of the clerk of the court having jurisdiction as provided in § 28-9-14 or delivered to one of the parties or his or her attorney.
Upon timely application, the Court will confirm an award that meets the criteria in § 28-9-16, is otherwise enforceable, and has not been "vacated, modified, or corrected." Id. at 17. *Page 6 
 III. Analysis
At the outset, this Court is well aware that "[t]he limited scope of judicial review of arbitration awards by the Superior Court is essential to ensure that parties may benefit from arbitration as an informal, expedient alternative to litigation in the court system."Purvis Systems, Inc. v. American Systems Corp.,788 A.2d 1112, 1118 (R.I. 2002). For the foregoing reasons, the Court declines to vacate the arbitration award at issue.
Here, the thrust of the Union's argument is that the arbitrator ignored evidence of the allegedly agreed upon salary scale progression mechanism. However, the seventy-four page arbitration award embarks on a lengthy analysis of the evidence presented, focused on the bargaining process between the parties. Therein, the arbitrator addresses the Union's primary argument that its August 30, 2009 salary proposal — which contained illustrative components supporting its position — had been accepted by the Committee. However, after devoting more than six pages to a detailed explanation of the August 30, 2009 proposal, the arbitrator ultimately concluded that "both parties retained their own subjective and divergent understandings of the way those moves should be accomplished." (See Arbitration Decision at 65.) Unable to find any direct agreement on the complex process of transitioning from an eleven step schedule to a twelve step schedule, the arbitrator searched elsewhere in the agreement for evidence of the parties' intent.
Along with transitioning to a ten-step salary schedule, the parties also agreed to general salary increases. As previously noted, the arbitrator indicated that
 the most reliable and the most objective indicator of the parties' intention may be found in their agreement to move the teachers "horizontally" during year 1 (e.g., from old Step 6, to new Step 6) and then to increase the year 2 pay by 4% (in two semi-annual increments of 2%). By following the agreed-upon year 1 pay *Page 7 
figures, as they are increased by 4% during year 2, we may determine what constitutes the next higher step. Id. at 65.
Based upon this expressed intent, the arbitrator found that the Union's proposed salary step transition "would produce a disproportionately high pay increase for the teachers, whereby they would move up two steps, rather than one step, during a single year." Id. at 66. Conversely, the arbitrator found that the School Committee placed the teachers on the appropriate salary steps because it gave them "the dual increase which the parties intended . . . due to the vertical movement to the next higher step . . . and . . . the 4 % pay increase." Id. at 68.[3]
Notably, "[a]n arbitrator has the inherent power to fashion an appropriate remedy as long as the award draws its essence from the contract and is based upon a `passably plausible' interpretation of the contract." Hart Engineering Co. v. Pawtucket Water SupplyBd., 560 A.2d 329, 330 (R.I. 1989) (internal quotation omitted). Here, the Arbitrator ascertained the parties' intentions from the contract and from the extensive negotiation process. He then made a determination based on his conclusions of their intent. In short, the arbitrator's award drew its essence from the contract and was a passably plausible interpretation of the intention of the parties as contained in their agreement. Moreover, "when a party claims that [an] arbitrator[ has] exceeded [his] authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made." Feibelman v.F.O., Inc., 604 A.2d 344, 345 (R.I. 1992) (quoting CoventryTeachers' Alliance v. Coventry School Committee,417 A.2d 886, 888 (R.I. 1980)). The Union has not met its burden. Thus, the arbitrator was well *Page 8 
within his power and authority when making the present award and the Court therefore declines the Union's motion to vacate the award based on an alleged disregard for the agreement.
 IV. Conclusion
Based on the foregoing, this Court confirms the arbitration award in its entirety. It draws its essence from the contract and does not manifestly disregard the CBA. The petition to vacate is denied. The petition to confirm the arbitration award is granted.
[1] Specifically, this CBA covered the 2006-2007, 2007-2008, and 2008-2009 contract years.
[2] It is odd that the parties failed to specify, in writing, such a critical issue — the precise calculation of salaries during the transition years.
[3] Though the Union makes much of an example in its proposal, no evidence was presented to establish that that the parties agreed to all specifics contained within the example, or even the methodology. Indeed, the arbitrator was not ignoring it to reach an irrational result as the Union claims on page 15 of their memorandum. The arbitration award on this issue was similar to the Committee's analysis, but such a result is not irrational and not shown to be something other than what was expressly agreed.